835 A.2d 1221

**Harry PRICE**

**v.**

**STATE of Maryland.**

**No. 9 Sept. Term, 2003.**

Court of Appeals of Maryland.

Nov. 19, 2003.

Michael R. Malloy, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for Petitioner.

Steven L. Holcomb, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of MD, on brief), Baltimore, for Respondent.

Argued before BELL, C.J., ELDRIDGE,* RAKER, WILNER, CATHELL, HARRELL, and BATTAGLIA, JJ.

RAKER, Judge.

In this case we decide whether daytime housebreaking, a former statutory crime that was abolished in 1994,[1] nevertheless persists as a "crime of violence" under § 441(e) of Article 27, Maryland Code (1957, 1996 Repl. Vol., 2001 Cum. Supp.),[2] for the purpose of imposing mandatory minimum sentences for illegal possession of firearm convictions pursuant to § 449(e) of the same article.

## I.

On May 17, 2001, Baltimore County police officers arrested Harry Price based upon an outstanding warrant for his arrest in a burglary investigation. Price was traveling in a car driven by his girlfriend on Liberty Road in Baltimore County. The police identified Price, removed both passengers from the vehicle, and proceeded to search the vehicle. In the passenger area where Price had been sitting, they discovered a small bag which contained a nine-millimeter handgun. Price was subsequently charged with four counts relating to burglary[3] and three relating to possession of the handgun.

---

* Eldridge, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. *See* Maryland Code (1957, 1987 Repl. Vol.) Art. 27, § 30 *superseded by* Maryland Code (2002, 2003 Cum. Supp.) §§ 6–202 to 6–205 of the Criminal Law Article.

2. Except where otherwise indicated, all future statutory references shall be to provisions in Article 27 of the Maryland Code (1957, 1996 Repl. Vol., 2001 Cum. Supp.), which was the applicable law at the time of Price's sentencing. Article 27 has now been repealed and recodified, much of it in the Criminal Law Article of the Maryland Code (2002, 2003 Cum. Supp.). However, the current provisions concerning firearms can be found in Title 5 of the Public Safety Article of the Maryland Code (2003).

3. The burglary counts were severed and tried in a separate trial.

Price was indicted by the Grand Jury for Baltimore County. At a bench trial, he was convicted of illegal possession of a regulated firearm, Maryland Code (1957, 1996 Repl. Vol., 2001 Cum. Supp.) Art. 27, § 445(d)(1)(ii), and unlawful wearing, carrying, or transporting of a handgun, § 36B. He was then sentenced, pursuant to § 449(e) of Article 27, to a mandatory minimum term of five years imprisonment without the possibility of parole on the possession conviction and a concurrent three-year sentence on the transportation charge.

Price noted a timely appeal to the Court of Special Appeals. He argued that his sentence pursuant to § 449(e) was improper under the theory that § 449(e) could not lawfully be applied to him. Section 449(e) provides for a mandatory minimum sentence of five years for a person "previously convicted of a crime of violence as defined in § 441(e)...." Price's only previous conviction, one for statutory daytime housebreaking in 1987, is not among those listed as a crime of violence in § 441(e). Price argued that because he had never been convicted of any of the crimes of violence listed in § 441(e), his handgun violation was not within the mandatory minimum sentencing guidelines of § 449(e).

The State countered that statutory daytime housebreaking was formerly listed among the crimes of violence in § 441(e) and, indeed, had been one at the time of Price's conviction in 1987. But due to "stylistic" changes in the criminal law article in 1994, daytime housebreaking was reinvented and subsumed by the statutory crimes of burglary in the first, second, and third degrees—which *are* included among the crimes of violence in § 441(e). Daytime housebreaking, the State contended, had been renamed, not repealed, at least with respect to § 441(e), and therefore Price was properly sentenced under § 449(e) to a mandatory minimum sentence without possibility of parole.

Accepting the State's understanding of the disputed sections of Article 27, the Court of Special Appeals affirmed the conviction in an unreported opinion, concluding that daytime housebreaking did not differ substantively from the crimes of

burglary in the first, second, and third degree. Relying upon the legislative history provided by the State, the court agreed that the changes to § 441(e) were merely stylistic and renamed daytime housebreaking to reflect the new statutory crimes of burglary in their various degrees. We granted Price's petition for writ of certiorari, 374 Md. 82, 821 A.2d 370 (2003), to determine whether the former crime of statutory daytime housebreaking is a crime of violence as defined in § 441(e), thereby triggering the mandatory minimum sentences for illegal firearm possession under § 449(e). We shall reverse.

## II.

The statutes at issue in this case fall within the "Regulated Firearms" subheading of Article 27, §§ 441 to 449. The mandatory sentence for Harry Price's conviction was imposed pursuant to § 449 of this subheading, which provides, in relevant part, as follows:

### § 449. Penalties.

\* \* \*

(e) *Illegal possession of firearm with certain previous convictions.*—A person who was previously convicted of a crime of violence as defined in § 441(e) of this article ... and who is in possession of a firearm as defined in § 445(d)(1)(i) and (ii) of this article, is guilty of a felony and upon conviction shall be imprisoned for not less than 5 years, no part of which may be suspended and the person may not be eligible for parole.

Section 449(e), by its plain structure, is divided into two requirements. The first requirement is that the defendant have a previous conviction of a crime that falls within § 441(e). The second requirement is that the defendant have a current conviction under § 445(d)(1)(i) and (ii). We deal in this case only with the first requirement, the particular crimes that fall within § 441(e), which is dispositive of Price's sentencing.[4]

---

4. Petitioner does not raise, and we do not decide, any question with respect to the second requirement of § 449(e). Therefore, we do not

In order for Price's conviction of daytime housebreaking in 1987 to trigger the mandatory sentencing of § 449(e), it must be defined as a "crime of violence" under § 441(e). Section 441 provides, in relevant part, as follows:

### § 441. Definitions.

(a) *In general.*—In this subheading the following words have the meanings indicated.

\* \* \*

(e) Crime of violence.—"Crime of violence" means:

(1) Abduction;

(2) Arson in the first degree;

(3) Assault in the first or second degree;

(4) Burglary in the first, second, or third degree;

(5) Carjacking and armed carjacking;

(6) Escape in the first degree;

(7) Kidnapping;

(8) Voluntary manslaughter;

(9) Maiming;

(10) Mayhem as previously proscribed under former § 384 of this article;

(11) Murder in the first or second degree;

(12) Rape in the first or second degree;

(13) Robbery under § 486 or § 487 of this article;

(14) Sexual offense in the first, second, or third degree;

(15) An attempt to commit any of the aforesaid offenses; or

(16) Assault with intent to commit any of the aforesaid offenses or any offense punishable by imprisonment for more than 1 year.

---

consider whether § 449(e)'s mandatory sentencing imperative requires a conviction under both § 445(d)(1)(i) *and* (ii), as the plain language indicates. Although Price was convicted pursuant to only § 445(d)(1)(ii), we assume for purposes of this case alone that this was sufficient to satisfy the second requirement of § 449(e), and that the only issue before us is whether the first requirement, that his prior crime fall within § 441(e), was satisfied.

The record indicates that Price has been convicted only of statutory daytime housebreaking, which is not mentioned explicitly in § 441(e). The critical inquiry in this case, then, is whether daytime housebreaking is included implicitly in § 441(e). Specifically, this will require scrutiny of § 441(e)(4), relating to burglary in the first, second, or third degree, because daytime housebreaking was repealed and replaced in 1994 with the new statutory definitions of burglary in the first, second, and third degree. The parties to this case vie within the confusion that results from the imposition of a new statutory scheme for the crime of burglary.

Petitioner urges this Court to declare application of § 449(e) to him as unlawful for the simple reason that the crime he committed is not included among the crimes that § 441(e) includes within its purview. Petitioner further argues that the legislative history behind the new statutory regime of burglary in 1994 indicates a specific legislative intent to remove daytime housebreaking from the crimes of violence in § 441(e). Finally, petitioner contends that statutory daytime housebreaking cannot, contrary to the Court of Special Appeals' opinion, be included in first, second, and third degree burglary because it lacks a key element that is required by the current statutory burglaries, making those crimes more serious than daytime housebreaking.

The State responds that statutory daytime housebreaking is retained implicitly in the current version of § 441(e). Because daytime housebreaking used to be included in a former version of § 441(e) and was considered a crime of violence in 1987 when Price was convicted of it, it was retained when the statute was revised in 1994 to reflect the new categories of burglary in the first, second, and third degree. As evidence of this legislative intent, the State submits the legislative history of the amending statute in 1994 which indicates that the changes to § 441(e) were merely "stylistic" and did not change substantively the crimes of violence, meaning that daytime housebreaking was retained within the statute. In short, the State contends that even if the statute does not contain the actual term "daytime housebreaking," that crime was sub-

sumed and included in the stylistic changes in 1994 that updated § 441(e) to reflect the new nomenclature of burglary.

## III.

The chief goal of statutory interpretation is to discover the actual intent of the legislature in enacting the statute, and the legion of cases that support this proposition need not be repeated here. In fact, all statutory interpretation begins, and usually ends, with the statutory text itself, *Marriott Employees v. MVA,* 346 Md. 437, 444–45, 697 A.2d 455, 458 (1997), for the legislative intent of a statute primarily reveals itself through the statute's very words, *Derry v. State,* 358 Md. 325, 335, 748 A.2d 478, 483 (2000). A court may neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute; nor may it construe the statute with forced or subtle interpretations that limit or extend its application. *County Council v. Dutcher,* 365 Md. 399, 416–417, 780 A.2d 1137, 1147 (2001). In short, if the words of a statute clearly and unambiguously delineate the legislative intent, ours is an ephemeral enterprise. We need investigate no further but simply apply the statute as it reads. *Derry,* 358 Md. at 335, 748 A.2d at 483; *Kaczorowski v. City of Baltimore,* 309 Md. 505, 515, 525 A.2d 628, 633 (1987).

In some cases, the statutory text reveals ambiguity, and then the job of this Court is to resolve that ambiguity in light of the legislative intent, using all the resources and tools of statutory construction at our disposal. *See Lewis v. State,* 348 Md. 648, 653–654, 705 A.2d 1128, 1130–31 (1998); *Haupt v. State,* 340 Md. 462, 471, 667 A.2d 179, 183 (1995); *Marriott,* 346 Md. at 445, 697 A.2d at 459. However, before judges may look to other sources for interpretation, first there must exist an ambiguity within the statute, i.e., two or more reasonable alternative interpretations of the statute. *See Greco v. State,* 347 Md. 423, 429, 701 A.2d 419, 421 (1997). Where the statutory language is free from such ambiguity, courts will neither look beyond the words of the statute itself to deter-

mine legislative intent nor add to or delete words from the statute, *see Gillespie v. State,* 370 Md. 219, 222, 804 A.2d 426, 427 (2002). Only when faced with ambiguity will courts consider both the literal or usual meaning of the words as well as their meaning in light of the objectives and purposes of the enactment. As our predecessors noted, "We cannot assume authority to read into the Act what the Legislature apparently deliberately left out. Judicial construction should only be resorted to when an ambiguity exists." *Howard Contr. Co. v. Yeager* 184 Md. 503, 511, 41 A.2d 494, 498 (1945). Therefore, the strongly preferred norm of statutory interpretation is to effectuate the plain language of the statutory text. Accordingly, we look to the plain language of § 441(e) to determine whether daytime housebreaking is included as a crime of violence therein, and conclude that it is not.

In this case, the plain language of § 441(e) is clear and determinative; and there being no ambiguity at all in the statute, we have no cause for resorting to divining legislative intent. By § 441(e)'s plain terms, daytime housebreaking does not appear in the list of crimes of violence. We are not at liberty to create an ambiguity where none otherwise exists, *Tidewater v. Mayor of Havre de Grace,* 337 Md. 338, 345, 653 A.2d 468, 472 (1995), and therefore cannot read § 441(e) contrary to its explicit language.

We do not read the statute divorced from its textual context, for "[a]dherence to the meaning of words does not require or permit isolation of words from their context," *Maguire v. State,* 192 Md. 615, 623, 65 A.2d 299, 302 (1949), and we "avoid constructions that are illogical, unreasonable, or inconsistent with common sense," *Marriott,* 346 Md. at 445, 697 A.2d at 459. But there is nothing in the context of § 441(e) or of the Regulated Firearms subheading that suggests a different, more compelling reading. To the contrary, examination of § 441(e)'s structure only confirms a legislative intent to exclude daytime housebreaking from the list delineating the crimes of violence. The crimes listed in § 441(e) are very specific and carefully defined; this is not a statute

that purports to sweep in many crimes through the use of general terms. For example, § 441(e) does not follow the structure of § 445(d)(1)—a section that is part of the very same subject matter and subheading of § 441(e)—which prohibits the possession of firearms to persons convicted of certain crimes. The list of included crimes within § 445(d)(1) is stated in very general terms, such as in § 445(d)(1)(iv)'s inclusion of "[a]ny violation classified as a common law offense where the person received a term of imprisonment of more than 2 years." In direct contrast, § 441(e) does not determine crimes by general terms that might sweep in a variety of crimes, but instead enumerates the precise legal names for each crime. Instead of "common law crime," § 441(e) specifically enumerates arson in the first degree, kidnapping, and burglary in the first, second, and third degrees. Given this level of specificity, we will read the statute even more narrowly.

Put another way, our refusal to read daytime housebreaking into the specifically enumerated crimes of § 441(e) is only an example of the ancient and sound rule of construction known as *inclusio unius est exclusio alterius*. *See Gillespie*, 370 Md. at 222, 804 A.2d at 428–29; *Dodds v. Shamer*, 339 Md. 540, 554, 663 A.2d 1318, 1325 (1995). By including precise, statutory crimes in § 441(e), the General Assembly signals a clear intent to exclude any crimes missing from the list. Such an intent is made even more compelling in light of the General Assembly's treatment of the crime mayhem, which is included in § 441(e) and which, like daytime housebreaking, was abolished by statute and replaced with the new statutory crimes of *assault in the first and second degrees*. *See* Maryland Code (1957, 1996 Repl. Vol.) Art. 27, § 384 (superseded). Because the General Assembly chose to include among § 441(e)'s crimes of violence "[m]ayhem as previously proscribed under former § 384 of this article," it is obvious that, given the remarkably analogous position of daytime housebreaking, the General Assembly was fully capable of drafting the statute in a way to include repealed crimes if it so intended. With

respect to daytime housebreaking, as opposed to mayhem, there is no indication of such an intent.

Moreover, aside from the absence of the *words* "daytime housebreaking" from § 441(e), the *substance* of the crime is also strikingly absent. Contrary to the State's contention and in accord with petitioner's, daytime housebreaking could not possibly be encompassed by the categories of burglary in the first, second, and third degree because a conviction for statutory burglary requires a key element that was not required for a conviction of daytime housebreaking: Whereas burglaries in the first, second, and third degree require that the defendant both break *and* enter the dwelling or storehouse of another, daytime housebreaking required proof only of "breaking a dwelling house." [5] An entry into the structure has always been required for burglary, but not of daytime housebreaking. *See, e.g., Hawkins v. State,* 291 Md. 688, 692, 436 A.2d 900, 902 (1981) (finding that the crime of breaking and entering a dwelling house could not be a lesser included offense of daytime housebreaking because the former required both a breaking and entering whereas the latter only required a breaking); *cf. Hebron v. State,* 331 Md. 219, 627 A.2d 1029 (1993) (holding that conviction for a crime that required "breaking and entering" also required the State to prove that defendant had actually entered the premises); *Brown v. State,* 311 Md. 426, 535 A.2d 485 (1988) (noting that the distinction

---

5. Price was convicted in 1987 of daytime housebreaking, a crime defined, at that time, by § 30(b) of Article 27:

   " **§ 30.  Breaking dwelling with intent to steal or commit felony.**
   * * *
   (b) Any person, his aiders, abettors and counsellors, who shall be convicted of the crime of *breaking a dwelling house* in the daytime with intent to commit murder or felony therein, or with intent to steal, take or carry away the personal goods of another of any value therefrom, shall be guilty of a felony, and upon conviction thereof, shall be sentenced to the penitentiary for not more than ten years."
   Maryland Code (1957, 1987 Repl. Vol.) Art. 27, § 30 (emphasis added). Each of the crimes of burglary in the first, second, and third degrees, states that "a person may not *break and enter*" a specified premise. Maryland Code (1957, 1996 Repl. Vol., 2001 Cum. Supp.) Art. 27, §§ 29(a), 30(a), 31(a) (emphasis added).

between daytime housebreaking, which required breaking, and another type of burglary that did not require breaking was significant in the application of mandatory minimum sentencing under § 643B of Article 27).

In sum, not one crime enumerated in § 441(e) can plausibly be read to include daytime housebreaking. In particular, § 441(e)'s inclusion of burglary in the first, second, or third degree cannot be read to have encompassed daytime housebreaking where (1) the plain language of the statute indicates no such inclusion; and (2) the substantive elements of the crime are different.

## IV.

Notwithstanding the clear language of § 441(e), the State would have us read daytime housebreaking into the statute because of legislative history that, the State contends, signals a contrary result. In support of its contention, the State submits evidence from the Committee Note to the 1994 amendment that removed daytime housebreaking from Article 27 and replaced it with burglaries in their various degrees. The Committee Note states that the change to § 441 is "stylistic and conforms this section to the new burglary offenses established within this bill. *This change essentially retains the current law in this area*," 1994 Md. Laws, ch. 712, § 2, p. 3155. From this, the State perceives that the legislature intended to retain daytime housebreaking as a crime of violence in § 441(e). We are not so persuaded.

As we have stated, where the plain language of the statute is free from ambiguity, legislative history of the sort the State has submitted is an improper vehicle for analyzing the legislature's intent, and we have been loathe to find an ambiguity that would require recourse to interpretive sources other than the statute's text. *See, e.g., Derry*, 358 Md. at 336, 748 A.2d at 484 (refusing to find an ambiguity in a statute, even where there existed a "theoretically arguable ambiguity," due to belief that the plain language manifested legislative intent). Indeed, the Committee Note to the 1994 amendments

also cautions that "[t]hese notes have not been adopted by the General Assembly and *may not be considered to be a part of the law.*" 1994 Md. Laws, ch. 712, § 2, p. 3145 (emphasis added). Nevertheless, in light of the State's argument and the holding of the Court of Special Appeals, we consider—and reject—the State's contention that the legislative history indicates a result contrary to the one we have determined.

First, the overwhelming weight of our analysis has supported petitioner's understanding of the statute. A change to a statute cannot, regardless of what the Committee Note declares, be considered "stylistic" if it removes one crime from an enumerated list and replaces it with another that requires different elements of proof.

Second, we are not persuaded that the legislative history to which the State refers presents a conflict with our understanding of § 441(e). While it is true that the Committee Note, in isolation, indicates an intent to retain "the current law," i.e., daytime housebreaking in § 441(e), a more comprehensive analysis of legislative history will lead to a much more ambivalent result.

In 1994, when daytime housebreaking was replaced with the new statutory burglaries in § 441(e), there did not exist a mandatory minimum statute for possession of a handgun. Section 449(e), the mandatory minimum statute for handgun possession, was passed six years later in 2000. *See* 2000 Md. Laws, ch. 2, § 1, p. 19. Thus, when § 441(e) was amended in 1994, the Legislature could not have contemplated that the crimes therein would, six years later, be the triggering device for mandatory minimum sentences. In fact, the legislative history surrounding the repeal of statutory daytime housebreaking in 1994 is replete with indications that the new statutory scheme for burglary was designed specifically to remove daytime housebreaking from the crimes eligible for mandatory minimum penalties under the mandatory penalty statutes in existence at that time. For example, the Senate Judicial Proceedings Committee Floor Report on the 1994 amendments to burglary states as follows:

"[T]he bill deletes the crimes of burglary and daytime housebreaking from the current list of crimes that constitute 'crimes of violence' for the purpose of imposing mandatory minimum penalties on subsequent offenders.

"The Committee believes the mandatory minimum sentences that currently apply to subsequent crimes of violence should be applicable only to crimes against persons or crimes that directly involve a threat to human life."

Floor Report, Senate Judicial Proceedings Committee, Senate Bill No. 322, p. 1 (1994). At the time of this report, the only statute that imposed mandatory minimum penalties with respect to daytime housebreaking was § 643B of Article 27; § 449(e)'s mandatory minimum provisions would not be enacted for another six years. The clear import of the Floor Report is that daytime housebreaking was considered by the drafters of the statute and deemed improper for the imposition of mandatory minimum sentences. Thus, our holding today comports well with the legislative history considered from this perspective.

## V.

Having determined that Price's previous conviction of daytime housebreaking does not fall within the contours of § 441(e), we now determine without difficulty that he could not be sentenced pursuant to the mandatory minimum provision in § 449(e).

The State argues, regardless of § 441(e)'s current enumerated crimes, that because daytime housebreaking used to be a crime of violence in 1987 when Price was convicted of it, Price was "previously convicted of a crime of violence" as required by § 449(e). The State then baldly asserts that therefore "the amendment to Section 441 in 1994 had no bearing on whether it was appropriate to sentence Price pursuant to Section 449 in 2001." State's brief at 5. The State, however, omits in its brief the completion of that part of the statute it quotes, which requires that Price be "previously convicted of a crime of violence *as defined in 441(e) of this article*" (emphasis added).

In other words, this argument, based upon an incomplete extraction of § 449(e), assumes the answer to the question before us. We dismiss it, and hold that because Price was *not* previously convicted of a crime of violence defined in § 441(e), he could not lawfully be sentenced pursuant to § 449(e) of Article 27.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE SENTENCE OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AND TO REMAND THE CASE TO THE CIRCUIT COURT FOR NEW SENTENCING PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY BALTIMORE COUNTY.*