908 A.2d 759

**James G. BENNETT**

**v.**

**STATE DEPARTMENT OF ASSESSMENTS AND TAXATION.**

**No. 1838, Sept. Term, 2005.**

Court of Special Appeals of Maryland.

Oct. 2, 2006.

Reconsideration Denied Dec. 8, 2006.

198

James G. Bennett, Pro se.

William K. Hammon (J. Joseph Curran, Atty. Gen., on brief), for appellee.

Panel DAVIS, KENNEY, EYLER, DEBORAH S., JJ.

EYLER, DEBORAH S., J.

For three years, James G. Bennett ("Bennett"), the appellant, applied to the Maryland Department of Assessments and Taxation ("SDAT"), the appellee, for a homeowner's property tax credit, pursuant to Md.Code (2000, 2001 Repl.Vol.), section 9–104 of the Tax–Property Code ("TP"). The SDAT denied his applications on the ground that his net worth exceeded the eligibility requirement for the tax credit. Bennett appealed each decision, also unsuccessfully, to the Property Tax Assessments Board, and then to the Maryland Tax Court, where the three cases were consolidated. The Tax Court also ruled

against him. Undeterred, he filed an action for judicial review in the Circuit Court for Montgomery County. The court upheld the decision of the Tax Court.

On appeal, Bennett raises one question for review, with numerous subsections.[1] For reasons we shall elaborate upon below, we have condensed and reworded his question, as follows:

Did the circuit court abuse its discretion when it refused to revise its ruling that the Tax Court properly concluded that an asset Bennett purchased with equity in his home must be included in his assets in calculating his net worth?

We shall affirm the judgment of the circuit court.

### FACTS AND PROCEEDINGS

This case is a sequel to similar litigation brought by Bennett that resulted in a published opinion of this Court. *Bennett v. State Dep't of Assessments and Taxation,* 143 Md.App. 356, 375, 795 A.2d 124 (2001) (*"Bennett I"*). *Bennett I* concerned Bennett's application for a homeowner's property tax credit ("HTC") for the tax year 1996. He was turned down because

---

1. The question as framed by Bennett is:

1. Has the controlling precedent for calculation of net worth, *Bennett 1,* been so tainted by deception, misrepresentation, lies, and other fraud that it should be expunged?

a. If so, will the tax credit applicant's mortgage liability be considered a liability to be included in the applicant's net worth?

i. If so, *Bennett 2* is moot because any removal of mortgage assets in calculating net worth would bias the net worth calculation in the same manner as the footnote in *Bennett 1. Bennett 1* would reflect a decision for the Appellant.

ii. If not, is not a rational possibility.

b. If not, how should the *Bennett 1* decision be revised in light of the fraud and how can the phantom asset problem be resolved: in the context of the *Bennett 1* decision?

i. Should it continue to exclude all home mortgage liability from net worth, and should the proceeds of the mortgage transaction—not used to purchase the residence—also be excluded from net worth? And to what extent?

ii. Should it be revised within the context of the *Bennett 1* decision to restate the interpretation of mortgage liability so the phantom asset problem is eliminated and the understatement of assets prevented?

his net worth exceeded the $200,000 maximum for eligibility for the HTC. TP § 9–104(i)(1).

The bone of contention between Bennett and the SDAT in *Bennett I* concerned Bennett's mortgage liability. The HTC statute provides that, in calculating "net worth" for the purpose of determining eligibility for the HTC, the value of the dwelling on which the property tax is assessed is not to be included as an asset. TP § 9–104(a)(2)(ii)(1); TP § 9–104(i)(1). Bennett took the position that, although the value of his home would not be counted as an asset in determining his net worth, his mortgage-secured loan should be included as a liability in computing his net worth. The SDAT took the position that net worth only can be sensibly calculated, and the purpose of the HTC statute only can be advanced, if the home is not counted as an asset *and* the mortgage on the home also is not counted as a liability.

The SDAT's position was adopted by the Tax Court, and ultimately by this Court.

Meanwhile, Bennett filed applications for the HTC for tax years 1997, 2000, and 2001. The SDAT informed him that his net worth exceeded the $200,000 statutory maximum, sending him a letter that detailed his assets and liabilities. Bennett responded that the asset column included what he termed a "mortgage asset," *i.e.*, an asset he acquired by taking equity out of his home (apparently by refinancing).[2] He argued that, because the "mortgage asset" was derived from the value of

---

2. Bennett uses the terms "mortgage assets" and "phantom assets" interchangeably in his brief to describe funds derived from the equity in one's home. The term "mortgage assets" is used by SDAT in its brief as well. For consistency, we also will use the term "mortgage asset," but it should be noted that the term is not part of the statutory language.

It is unclear from both the record and the briefs the precise nature of the "mortgage asset" at issue, but it appears that Bennett obtained a mortgage by refinancing his home and used the proceeds of this mortgage to purchase an investment. Based on financial information supplied by Bennett to the SDAT during the course of the prior case, *Bennett I,* and included in the record in this case, it appears that the "mortgage asset" he purchased was an interest in a limited partnership.

the home, it should not be considered as an asset in determining his net worth, just as the value of the home itself is not included as an asset in determining net worth.

The SDAT disagreed, and included the "mortgage asset" in Bennett's net worth calculation. The SDAT did not include any corresponding liability, because whatever liability had been incurred was in the form of a mortgage on the home; and, under the holding in *Bennett I*, the mortgage on the home is not counted as a liability.

Bennett was unsuccessful in his appeal of the denials of his applications to the Property Tax Assessments Board. He then appealed the agency decision to the Maryland Tax Court, which also rejected his argument. The Tax Court, relying primarily on our decision in *Bennett I*, ruled that Bennett's net worth included his "mortgage asset" as an asset, but did not include his mortgage liability as a liability. The parties stipulated that, with the "mortgage asset" included as an asset, Bennett's net worth for all three tax years exceeded $200,000.

As noted above, the circuit court rejected Bennett's argument on petition for judicial review and then denied his "Motion to Revise Judgment."

## DISCUSSION

Bennett's essential contention is that the "mortgage asset" he acquired with funds derived from equity in his dwelling should be excluded from his net worth computation for the purposes of eligibility for the HTC under TP section 9–104(i)(1). Both parties agree that Bennett is not entitled to the HTC if the "mortgage asset" is included in the calculation of net worth because his net worth would exceed the statutory eligibility limit of $200,000. TP § 9–104(i)(1).

As noted above, in *Bennett I*, this Court held that mortgage liability on a taxpayer's primary residence should not be included in the net worth computation for purposes of HTC eligibility because the value of the residence is expressly

excluded from consideration as an asset under the statute. *Bennett I,* 143 Md.App. at 372, 795 A.2d 124.[3]

Due to the timing of his notice of appeal, Bennett cannot challenge, directly, the circuit court's decision to affirm the Tax Court. The order affirming the Tax Court decision was entered on July 15, 2005. Because Bennett filed his "Motion to Revise Judgment" pursuant to Rule 2–535 later than ten days after the entry of the order, the filing did not toll the running of the 30–day appeal period under Rule 8–202(c). *Unnamed Atty. v. Attorney Grievance Com'n,* 303 Md. 473, 486, 494 A.2d 940 (1985); *Sieck v. Sieck,* 66 Md.App. 37, 43–44, 502 A.2d 528 (1986). Bennett did not file a notice of appeal within 30 days of July 15, 2005. On October 12, 2005, within 30 days of the court's order denying his "Motion to Revise Judgment," Bennett noted an appeal. Accordingly, the only timely appeal in this case is from the court's decision to deny the "Motion to Revise Judgment."

■ "An appeal from the denial of a motion asking the court to exercise its revisory power is not necessarily the same as an appeal from the judgment itself. Rather, the standard of review is whether the trial court abused its discretion in declining to revise the judgment." *Green v. Brooks,* 125 Md.App. 349, 362, 725 A.2d 596 (1999) (quoting *Blitz v. Beth Isaac Adas Israel Congregation,* 115 Md.App. 460, 469 n. 4,

---

**3.** The parties both devote some argument to the preclusive effect, if any, of the *Bennett I* decision on this case. *Bennett I* involved the same parties as the current case, but a prior year's application for the HTC, thus *res judicata* is not implicated. *Colandrea v. Wilde Lake Community Ass'n, Inc.,* 361 Md. 371, 388, 761 A.2d 899 (2000) (the doctrine of *res judicata* applies where a proceeding involves the same parties *and* the same cause of action as the prior proceeding). The mortgage liability Bennett sought to include in his worth computation in *Bennett I* appears to be the same mortgage that produced the "mortgage asset" he now seeks to exclude from the net worth computation. This Court in *Bennett I* did not decide the issue of "mortgage assets," however, because it had not been raised in the Tax Court and therefore was not properly before the Court on appeal. *Bennett I, supra,* 143 Md.App. at 374–75, 795 A.2d 124. As such, Bennett is not collaterally estopped from arguing this issue. *Welsh v. Gerber Products, Inc.,* 315 Md. 510, 516, 555 A.2d 486 (1989) (collateral estoppel applies when the same issue actually was litigated in a prior case between the same parties).

694 A.2d 107 (1997), *rev'd on other grounds,* 352 Md. 31, 720 A.2d 912 (1998)). In this case, in order to determine whether an abuse of discretion occurred, we must review the agency decision.

The decision of the Maryland Tax Court, an administrative agency, is accorded great deference. *Bd. of Physician Quality Assurance v. Banks,* 354 Md. 59, 67–69, 729 A.2d 376 (1999); *CBS, Inc. v. Comptroller of the Treasury,* 319 Md. 687, 697–98, 575 A.2d 324 (1990). Ordinarily, our role in appeals from agency decisions is to review the agency decision itself, rather than the decision of the circuit court. *Ahalt v. Montgomery County,* 113 Md.App. 14, 20, 686 A.2d 683 (1996). We review the agency's decision in a light most favorable to the agency. *Pleasants Invs. Ltd. P'ship v. Dep't of Assessments and Taxation,* 141 Md.App. 481, 489, 786 A.2d 13 (2001) (citing *Supervisor of Assessments v. Keeler,* 362 Md. 198, 207, 764 A.2d 821 (2001)). We shall affirm the decision if it "is not erroneous as a matter of law and is supported by substantial evidence appearing in the record." *Bennett I, supra,* 143 Md.App. at 366, 795 A.2d 124 (citing *CBS Inc., supra,* 319 Md. at 697–98, 575 A.2d 324).

Here, the question before the Tax Court was one of statutory interpretation: whether Bennett's "mortgage asset" is an "asset" within the meaning of TP section 9–104(a)(2). If so, it must be included in his net worth calculation, and he does not qualify for the HTC. If not, it is properly excluded from that calculation, and he does qualify for the HTC. Bennett contends that, because the mortgage liability he incurred to acquire the "mortgage asset" is excluded from consideration under *Bennett I,* the "mortgage asset" must also be excluded, to avoid an overstatement of assets. The SDAT responds that the HTC statutory scheme does not distinguish between assets based upon the source of the funds used to purchase them; and, because Bennett's "mortgage asset" qualifies as "any other investment," under TP section 9–104(a)(2)(i)(6), it must be included in the net worth calculation.

The meaning of a statute is a question of law. *Bd. of License Com'rs for Anne Arundel County v. Corridor Wine, Inc.,* 150 Md.App. 275, 280, 819 A.2d 1141 (2003). When we engage in statutory interpretation, our goal is to determine and effectuate the Legislature's intent. *Montgomery County v. Buckman,* 333 Md. 516, 523, 636 A.2d 448 (1994); *Bennett I, supra,* 143 Md.App. at 367, 795 A.2d 124. We give the words of the statute their plain and ordinary meaning. *Collins v. State,* 383 Md. 684, 688–89, 861 A.2d 727 (2004); *Pak v. Hoang,* 378 Md. 315, 323, 835 A.2d 1185 (2003). In doing so, we will read the words in the context of the statutory scheme of which they are a part. *Morris v. Prince George's Co.,* 319 Md. 597, 604, 573 A.2d 1346 (1990); *Haupt v. State,* 340 Md. 462, 471, 667 A.2d 179 (1995). If, given its plain and ordinary meaning, the statutory language is clear and unambiguous, we need not look beyond the words to determine legislative intent. *Nesbit v. Govt. Employees Ins. Co.,* 382 Md. 65, 73, 854 A.2d 879 (2004) (citing *Chesapeake & Potomac Tel. Co. of Md. v. Dir. of Finance,* 343 Md. 567, 683 A.2d 512 (1996)); *Moore v. Miley,* 372 Md. 663, 677, 814 A.2d 557 (2003). In such an instance, "we simply apply the statute as it reads." *Mohan v. Norris,* 158 Md.App. 45, 57, 854 A.2d 259 (2004) (quoting *Derry v. State,* 358 Md. 325, 335, 748 A.2d 478 (2000)). We may "neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute." *Price v. State,* 378 Md. 378, 387, 835 A.2d 1221 (2003); *Mohan, supra,* 158 Md.App. at 57, 854 A.2d 259. Whether the words of a statute are ambiguous is a question of law. *Moore v. State,* 388 Md. 446, 452–53, 879 A.2d 1111 (2005).

■ If a statutory term or provision is ambiguous, however, we must apply additional principles of statutory interpretation to determine the meaning of the statute. *Price, supra,* 378 Md. at 387, 835 A.2d 1221; *Allstate Ins. Co. v. Kim,* 376 Md. 276, 290, 829 A.2d 611 (2003); *Heartwood 88, Inc. v. Montgomery Co.,* 156 Md.App. 333, 359, 846 A.2d 1096 (2004). We will interpret the provision in the context of the statutory scheme. *Selig v. State Highway Admin.,* 383 Md. 655, 681,

861 A.2d 710 (2004) (citing *Dep't of State Planning v. Mayor & Council of City of Hagerstown*, 288 Md. 9, 14, 415 A.2d 296 (1980)); *Gordon Family P'ship v. Gar on Jer*, 348 Md. 129, 138, 702 A.2d 753 (1997). Furthermore, we will consider the purpose and objective of the Legislature's enactment. *Deville v. State*, 383 Md. 217, 223, 858 A.2d 484 (2004); *Gleneagles, Inc. v. Hanks*, 156 Md.App. 543, 553, 847 A.2d 520(2004). We must strive to avoid statutory constructions that are "illogical, unreasonable, or inconsistent with common sense." *Bd. of Physician Quality Assur. v. Mullan*, 381 Md. 157, 168, 848 A.2d 642 (2004) (quoting *Price, supra*, 378 Md. at 388, 835 A.2d 1221); *Bank of Am. v. Stine*, 379 Md. 76, 86, 839 A.2d 727 (2003).

█ We now turn to the statutory language at issue here. The term "assets" is defined by example in TP section 9–104(a)(2)(i). It includes: "1. real property; 2. cash; 3. savings accounts; 4. stocks; 5. bonds; and 6. any other investment." The statute specifically excludes certain property from being an "asset," however, including "the dwelling for which a property tax credit is sought under this section." TP § 9–104(a)(2)(ii). "Net Worth" is defined as "the sum of the current market value of all assets, less any outstanding liability." TP § 9–104(a)(12).

Under the plain language of the statute, Bennett's "mortgage asset" is an "asset," within the meaning of TP section 9–104(a)(2)(i). By Bennett's own acknowledgment, the "mortgage asset" was purchased as an investment. Accordingly, it falls into the category of "any other investment." While the statute excludes the value of the dwelling as an asset, it does not exclude equity in the dwelling that is converted to cash proceeds, whether through refinancing or a home equity loan, and either is held or used to purchase other assets for investment.

Bennett suggests that because his "mortgage asset" was derived from his dwelling, it should be treated as if it were the dwelling itself, and excluded from his net worth. The plain language of TP section 9–104(a)(2)(i) belies this assertion.

The source of the "assets" is not mentioned in the statute. Rather, the form of the assets is key. The statute only expressly excludes from "assets" the subject dwelling, the cash value of life insurance, qualified retirement savings plans and individual retirement accounts, and tangible personal property. If Bennett had owned a life insurance policy and then cashed it out for investment purposes, his new investment asset would no less be part of his net worth than the "mortgage asset" at issue in this case. (Likewise, if he had refinanced his original mortgage and taken out cash with which he purchased tangible personal property, those items would not be counted as assets.)

The Court of Appeals stated in *State Dep't of Assessments and Taxation v. Belcher*, 315 Md. 111, 118, 553 A.2d 691 (1989):

> It is a firmly established principle of law that exemptions from taxation are not favored, but are strictly construed in favor of the State.... Therefore, before any claimant can obtain an exemption, it is encumbent [sic] upon him to show affirmatively that the alleged exemption has been clearly allowed by law. If there is a real doubt upon the subject, that doubt must be resolved in favor of the State. It is only where the deliberate purpose of the Legislature to grant an exemption is expressed in clear and unequivocal terms that a claim to an exemption can be maintained.

The purpose of the HTC legislation is to protect homeowners without significant assets from having to sell their homes because they no longer can afford to pay their rising property taxes. *Bennett I*, 143 Md.App. at 375, 795 A.2d 124 (purpose was to prevent people from being "taxed out of their home"). The home itself cannot pay the taxes, thus, absent other assets, this class of taxpayers is disadvantaged. Yet, a taxpayer like Bennett, who chooses to withdraw equity from his home through mortgage refinancing or a home equity loan *is* able to use the equity in his home to pay

property taxes.[4] In that situation, the entire value of the homeowner's house is no longer a trapped asset, because part of it has been converted to cash. As this Court stated in *Bennett I:* "The goal of the net worth test is not to ensure the best financial position for the mortgage holder. Rather, it is to measure the taxpayer's ability to pay the tax." *Bennett I, supra,* 143 Md.App. at 375, 795 A.2d 124. Furthermore, "an exemption claim cannot be sustained unless it is shown to be within the spirit as well as the letter of the exemption law." *Belcher, supra,* 315 Md. at 118, 553 A.2d 691 (citation omitted). The purpose of the HTC statute would be thwarted if taxpayers could withdraw equity in their homes and use it for investment purposes while still qualifying for the HTC.

Bennett's "mortgage asset" is an "asset" under TP section 9–104(a)(2)(i) and therefore properly was included in calculating his net worth. The Tax Court's decision was legally correct. Accordingly, the circuit court's decision not to revise its judgment upholding the Tax Court's decision cannot have been an abuse of discretion.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY THE APPELLANT.**

---

**4.** Bennett makes this exact point in his brief when he states: "[W]hile it is partially true that the residence itself cannot pay taxes, its owner can.... Outright sale of the residence to pay taxes was an action the Legislature was trying to prevent.... [T]he home **can** be used as collateral for a loan to pay those taxes **unless** there is no home equity available." (Emphasis in original.)