961 A.2d 1152

**STATE of Maryland**

v.

**Omied KARMAND.**

**No. 3050, Sept. Term, 2007.**

Court of Special Appeals of Maryland.

Dec. 8, 2008.

Jessica V. Carter (Douglas F. Gansler, Attorney General on the brief), Baltimore, for appellant.

Catherine Woolley (Howard Cheris, Armstrong & Cheris, Chartered on the brief), Rockville, for appellee.

Argued before DAVIS, DEBORAH S. EYLER, and MEREDITH, JJ.

DEBORAH S. EYLER, J.

In the Circuit Court for Montgomery County, pursuant to an agreement with the State, Omied Karmand pleaded guilty to a single count of distribution of cocaine in violation of Md.Code (2002), section 5–602(1) of the Criminal Law Article ("CL").[1] The underlying offense was the sale of cocaine by Karmand, through an intermediary, to an undercover narcotics officer, in a parking lot in Rockville. Later that same day, Karmand was arrested for selling cocaine in the District of Columbia. That incident involved the same undercover officer but a separate sale of cocaine.

The plea agreement called for a binding 18–month cap on the executed portion of the sentence.[2] By the time the plea was taken, Karmand had been convicted for the same-day drug offense in the District of Columbia and had served 30 days in jail. Pursuant to the plea agreement, the court sentenced Karmand to three years' imprisonment, all but nine

---

1. CL section 5–602 states:
   Except as otherwise provided in this title, a person may not:
   (1) manufacture, distribute, or dispense a controlled dangerous substance; or
   (1) possess a controlled dangerous substance in sufficient quantity reasonably to indicate under all circumstances an intent to manufacture, distribute, or dispense a controlled dangerous substance.

2. The maximum penalty is set forth in CL section 5–608(a): imprisonment of 20 years and a $25,000 fine.

months suspended (with credit for 179 days served), followed by 18 months' probation.

Within 90 days, Karmand filed a motion for reconsideration of sentence under Rule 4–345(e), with a request for a hearing ("the First Motion").[3] Four months later, he filed a line withdrawing his hearing request and asking the court to hold the First Motion *sub curia* until he filed a new request for a hearing. He filed a new hearing request about a year later.

Two months after the new hearing request was filed, the court held a hearing on the First Motion. The original sentencing judge had retired, so another judge presided. By then, Karmand had finished serving his prison time and his probationary period, and was attending community college and doing well. Karmand's lawyer asked the court to strike the conviction and enter probation before judgment ("PBJ"), under Md.Code (2001, 2007 Supp.) section 6–220 of the Criminal Procedure Article ("CP"),[4] so Karmand could pursue his plans to become a healthcare professional, which would not be possible with a felony conviction on his record. The prosecutor argued in opposition that this was Karmand's second drug distribution conviction and that he already had received a PBJ in a prior juvenile offense for possession of alcohol, without learning from that benefit. The prosecutor did not argue that it was outside the court's authority, under Rule 4–345, to strike a conviction and grant a PBJ.

---

**3.** The motion was entitled "Request for Reconsideration."

**4.** The current statute, codified at the 2008 Replacement Volume, is identical to that in effect at the time of the hearing. CP section 6–220 states in relevant part:

\* \* \*

(b)(1) When a defendant pleads guilty or nolo contendere or is found guilty of a crime, a court may stay the entering of judgment, defer further proceedings, and place the defendant on probation subject to reasonable conditions if:

(i) the court finds that the best interests of the defendant and the public welfare would be served; and

In the following colloquy, the court denied the motion for reconsideration of sentence:

THE COURT: ... I guess where I come down is that, you know, with the whole notion of licensing and the high degree of responsibility involved in the public trust, I just don't think with the, you know, the conviction that you have here and the one that you already had in the District [of Columbia], even though that's been obviated, I just don't feel like it would be in the public interest to grant the probation before judgment. *And for that reason, I regret that I am going to deny the request and I'm going to let the conviction stand.*

[DEFENSE COUNSEL]: Judge, if I could just say, I understand the Court's ruling. I don't know if the Court was made to understand that the incidents that led to his arrest and his charges here chronologically predated the conduct in the District of Columbia. I don't know if that matters or changes things but—

THE COURT: I'm not, I take it that they were related in some way and involved the same officer or whatever but yet that they were separate convictions. I mean, that's what I understood. And I gather convictions that involved separate amounts of cocaine.

[DEFENSE COUNSEL]: Yes.

THE COURT: And, you know, I just feel like at some point there is a threshold that you can just, you can swallow and try and pass and you get to a point where you swallow and I just [don't] pass. And I compliment you on your advocacy, Mr. [counsel]. I think you've done as much as could be done on [Karmand's] behalf. *But I just, in good conscience, I just don't feel that I can grant that. Respectfully denied.*

[DEFENSE COUNSEL]: Very well.

[STATE'S ATTORNEY]: Thank you, Your Honor.

---

(ii) the defendant gives written consent after determination of guilt · or acceptance of a nolo contendere plea.

\* \* \*

THE COURT: Would you like your materials back?

[DEFENSE COUNSEL]: Sure.

(Emphasis added.)

The hearing concluded at 9:23:52 a.m. At that point in the hearing transcript, the word "(Recess)" appears. Then, at 9:31:06, the hearing transcript continues, picking up as defense counsel was speaking:

[DEFENSE COUNSEL]:—consideration and leave it as an open matter, or is this, I don't want to give my client false hope and I don't want to read the Court wrong, so maybe just ask that you—

THE COURT: Well, you can certainly ... file a motion. I'm not sure what else you can put forward that hasn't been put forward. So, frankly, I don't want to encourage you in that regard.

[DEFENSE COUNSEL]: Okay.

THE COURT: But you have every right to file a motion.

[DEFENSE COUNSEL]: Thank you, Your Honor.

[STATE'S ATTORNEY]: Thank you, Your Honor.

[APPELLEE]: Thank you, Your Honor.

The record does not contain a written order denying the First Motion. The docket entries state clearly, however, that the First Motion was denied.

Less than 30 days after the hearing on the First Motion, Karmand filed a second motion for reconsideration of sentence ("the Second Motion"), and a hearing request.[5] In the Second Motion, he acknowledged that the court had denied the First Motion. He asked the court to "revisit [his] request to reconsider this sentence a felony record at a time in the future when requested by [Karmand]."

On October 15, 2007, the court entered an order scheduling a hearing on the Second Motion for January 10, 2008.

---

5. This motion also was entitled "Request for Reconsideration."

At the January 10, 2008 hearing, the presiding judge listened to the arguments of counsel and said that he was going to hold the matter *sub curia.* Later that same day, he issued an order granting the Second Motion by striking Karmand's conviction and entering PBJ.

Less than 30 days later, the State noted this appeal pursuant to Md.Code (1974, 2006 Repl.Vol.), section 12–302 of the Courts & Judicial Proceedings Article ("CJ"). It poses two questions,[6] which we have divided and reworded because they in fact raise three issues:

I.  Did the circuit court err in granting the Second Motion because it had denied the First Motion and the Second Motion was not timely filed?

II. Did the circuit court err in granting the Second Motion by striking the distribution conviction and sentence and entering a probation before judgment because Rule 4–345 does not authorize a court to reconsider a sentence by striking the conviction for which the sentence was imposed?

III. Did the circuit court err in granting the Second Motion by striking the distribution conviction and sentence and entering probation before judgment when the original conviction and sentence were the result of a plea bargain and the State did not consent, under Rule 4–243, to a disposition more favorable than the plea bargain?

---

6.  As worded by the State, the questions presented are:

I.  Did the trial court err in striking [Karmand's] conviction and granting probation before judgment because [Karmand's] second request for reconsideration was not filed within 90 days of the imposition of sentence, as required by Rule 4–345, and Rule 4–345 only authorizes the reduction or modification of a sentence?

II. Did the trial court err in striking [Karmand's] conviction and granting probation before judgment because Rule 4–243 required the State's consent before the trial court was authorized to order a disposition more favorable to [Karmand] than that provided in the plea agreement, which the trial court had approved?

We find merit in the State's first issue, and therefore we shall vacate the order granting the Second Motion. Our disposition of the first issue means we shall not reach the second or third issues.

## DISCUSSION

### I.

CJ section 12–302(c) allows in particular circumstances an appeal by the State from a final judgment in a criminal case. For our purposes, the relevant language is as follows:

> (c) In a criminal case, the State may appeal as provided in this subsection.... (2) *The State may appeal from a final judgment if the State alleges that the trial judge:*
>
> (i) Failed to impose the sentence specifically mandated by the Code; or
>
> (ii) *Imposed or modified a sentence in violation of the Maryland Rules.*

(Emphasis added.)

Rule 4–345 is entitled "**Sentencing—Revisory power of court.**" In subsection (a), it allows the court to correct an illegal sentence at any time; and in subsection (b), it grants the court revisory power over a sentence "in the case of fraud, mistake, or irregularity." The court may correct an evident mistake in the announcement of a sentence under subsection (c) and, in desertion and non-support cases, at any time before the expiration of the sentence, the court may "modify, reduce, or vacate the sentence or place the defendant on probation." Subsection (e) of the rule is most pertinent to the case at bar, as it is the subsection on which the First and Second Motions were based. It reads, in relevant part:

> (e) **Modification Upon Motion.** (1) Generally, upon a motion filed within 90 days after imposition of a sentence ... in a circuit court, whether or not an appeal has been filed, the court has revisory power over the sentence except that it may not revise the sentence after the expiration of

five years from the date the sentence originally was imposed on the defendant and it may not increase the sentence. . . . Finally, subsection (f) gives the defendant, the State, and victims a right to be heard before "[t]he court may modify, reduce, correct, or vacate a sentence."

The State contends the circuit court's only authority to modify Karmand's sentence arose under Rule 4–345(e), but that the court's sentence modification violated that rule. Specifically, it argues that the Second Motion, which the court granted, was filed more than 90 days after the imposition of sentence, and therefore was not timely, and the court's revisory power under subsection (e) only exists upon the filing of such a timely motion. The only timely motion that was filed (the First Motion) was denied; thereafter, the court did not have authority to revise its ruling.

Karmand counters first that this appeal must be dismissed as not allowed by law. He maintains that, because CJ section 12–302(c)(2)(ii) only permits the State to appeal a final judgment "imposing or modifying a sentence," the State may not appeal a final judgment *reducing* a sentence. On the merits, Karmand argues that his Second Motion was not untimely under Rule 4–345(e), because the court did not rule on the First Motion, but held it *sub curia*, and the Second Motion merely was an extension of the first. He also suggests that the court had revisory power over its ruling on the First Motion and, therefore, even if it ruled on the First Motion, it could change its mind and revise its ruling, which it did.

### (a)

### *Does the State Have the Right to Appeal the Circuit Court's January 10, 2008 Sentencing Order?*

Until 2003, the right of appeal granted the State in CJ section 12–302(c) was limited to an appeal from a final judgment that, allegedly, failed to impose a sentence as mandated by a Maryland statute. To the extent the State ever had a common law right to appeal a final judgment imposing or modifying a sentence, that right was replaced by the statutory

scheme in CJ section 12–302(c). *State v. Green*, 367 Md. 61, 76, 785 A.2d 1275 (2001). The State's right of appeal initially established in CJ section 12–302(c) did not apply to sentences imposed in violation of the Maryland Rules, however. *Chertkov v. State*, 335 Md. 161, 169, 642 A.2d 232 (1994); *State v. Warfield*, 148 Md.App. 178, 187, 811 A.2d 382 (2002). The General Assembly closed that gap in 2003 by amending CJ section 12–302(c) to add what is now subsection (c)(2)(ii), permitting the State to appeal from a final judgment "[i]mpos[ing] or modif[ying] a sentence in violation of the Maryland Rules." 2003 Md. Laws, ch. 141, § 1.[7]

Karmand argues that the State's statutory right to appeal from a final judgment *imposing or modifying* a sentence in violation of the Maryland Rules does not include the right to appeal from a final judgment *reducing* a sentence in violation of the Maryland Rules. Referring generally to Rule 4–345, without identifying the subsections he is referring to—(c) and (f), not (e)—he emphasizes that the rule authorizes the court to "modify, reduce, correct or vacate" a sentence. He then argues that, because CJ section 12–302(c)(2)(ii) only authorizes an appeal by the State from a final judgment *"impos[ing] or modify[ing]"* a sentence in violation of the Maryland Rules, it cannot be read to permit the State to appeal a judgment *reducing* a sentence in violation of the Maryland Rules. In other words, because in subsections (c) and (f) of Rule 4–345 changes in sentences are spelled out in specific terms, as modifications, reductions, corrections, or vacations, a modification of a sentence does not mean a reduction of a sentence; therefore, the word "modify" in CJ

---

**7.** The Fiscal and Policy Note accompanying H.B. 333, the legislative vehicle enacting the amendment, states that its purpose was to abrogate the holding of *State v. Warfield, supra*, because:

> The [*Warfield*] [C]ourt reasoned that, prior to the enactment of CJ [section]12–302, the State had a common law right to appeal an action by a judge that exceeded the judge's authority. However, the use of the precise term "Code" in CJ 12–302 abolished the right to appeal based on either this common law authority, or on a provision of the Maryland Rules.

Fiscal and Policy Note, 2003 H.B. 333 at 2.

section 12–302(c)(2)(ii) cannot be read to include "reduce." We see no merit in this argument.

The "cardinal rule" of statutory construction is to ascertain and effectuate the legislative intent, *Tribbitt v. State*, 403 Md. 638, 645, 943 A.2d 1260 (2008), and, in the case of a Maryland Rule, to ascertain and effectuate "the purpose and objectives of the rule." *Johnson v. State*, 360 Md. 250, 264, 757 A.2d 796 (2000). We begin our analysis with the plain meaning of the text. If that plain meaning is unambiguous, our analysis ordinarily is complete. *Ishola v. State*, 404 Md. 155, 160, 945 A.2d 1273 (2008). Otherwise, if the text of the statute (or rule) admits of more than one reasonable meaning, we turn to secondary indicia of meaning such as legislative history, caselaw, and statutory purpose. *Opert v. Criminal Injuries Comp. Bd.*, 403 Md. 587, 593, 943 A.2d 1229 (2008). "To the extent relevant, we look as well to 'the statute's structure, including the title, and how the statute relates to other laws.'" *Id.* (quoting *Stouffer v. Pearson*, 390 Md. 36, 46, 887 A.2d 623 (2005)). We take special care to avoid strained or absurd interpretations. *In re: Colby H.*, 362 Md. 702, 722, 766 A.2d 639 (2001). We do not add or delete language "so as to reflect an intent not evidenced in the plain and unambiguous language of the statute," nor do we "construe the statute with forced or subtle interpretations that limit or extend its application." *Price v. State*, 378 Md. 378, 387, 835 A.2d 1221 (2003). The plain meaning of the verb "to modify" is "to change somewhat the form or qualities of; alter partially; amend." RANDOM HOUSE WEBSTER'S COLLEGIATE DICTIONARY 871 (1996). The verb does not connote a change or alteration in a particular direction or of a particular type. Without language creating a restriction, a modification of a sentence, as that phrase is used in CJ section 1 2–302(c)(2)(ii), encompasses an alteration of the sentence, including a reduction. That meaning is evident, and the statutory language is not ambiguous. *See Chow v. State*, 393 Md. 431, 444, 903 A.2d 388 (2006) (holding that question of ambiguity *vel non* of statutory language is one of law and therefore is addressed *de novo* on appellate review); *Bennett v. State Dept. of Assessments &*

*Taxation,* 171 Md.App. 197, 205, 908 A.2d 759 (2006) (same). It therefore is not necessary to resort to canons of statutory construction to ascertain the meaning of "modify" in CJ section 12–302(c)(2)(ii).

Moreover, even if we were to apply the *expressio unius est exclusio alterius* (expression of the one implies exclusion of the alternative) principle of statutory construction, as Karmand advocates, we would not conclude that "to modify" does not include "to reduce." The list of verbs that Karmand focuses upon to make his argument—to "modify, reduce, correct or vacate"—does not appear in the statute. There is nothing in the language of CJ section 12–302(c), or in any other subsection of the statute, that distinguishes "modify" from "reduce," so as to suggest that a modification is not a reduction (and vice versa). Rather, the list of verbs appears in subsections of Rule 4–345, which, as a rule adopted by the Court of Appeals, is not a product of the General Assembly and does not reflect the intentions of the General Assembly in enacting CJ section 12–302(c). Indeed, the list does not even appear in subsection (e) of Rule 4–345, which is the only part of the rule we are concerned with.

Furthermore, the interpretation of CJ section 12–302(c)(2)(ii) Karmand advances would produce an absurd result that would render nugatory the very right of appeal it grants, and hence could not have been the intended meaning of "modification" in that statute. A circuit court's authority to modify a sentence under Rule 4–345(e) is primarily to reduce it; the rule expressly provides that a circuit court "may not increase the sentence." [8] Thus, virtually all permissible sentence modifications under Rule 4–345(e) will be sentence reductions. If a "modification" of a sentence does not include a "reduction" of a sentence, there would be no Rule 4–345 sentence modification the State would have a right to appeal under CJ section 12–302(c)(2)(ii), and there would have been

---

8. A three-judge circuit court panel may revise a sentence upward. Md. Rule 4–344(f).

little reason for the legislature to have granted the State that statutory right of appeal.

In sum, the State has the right under CJ section 12–302(c)(2)(ii) to appeal a final judgment reducing a sentence in violation of Rule 4–345(e). Therefore, we shall not dismiss this appeal.

### (b)

### *Did the Court Have Authority to Grant the Second Motion?*

As mentioned previously, the State contends the trial court lacked authority to grant the Second Motion because the motion was filed outside the 90–day limit in Rule 4–345(e). Karmand counters that the sentencing court's revisory power subsists for the entire five-year period set forth in the rule and, because the court held his First Motion *sub curia*, even after the hearing in which it verbally denied that motion, the 90–day time limit was satisfied.

The record does not support Karmand's assertion that the court held the First Motion *sub curia*. The court expressly denied the First Motion on the record. Indeed, Karmand acknowledged that fact in his Second Motion. The brief colloquy on the record a few minutes after that ruling does not show that the court held the matter *sub curia*. To the contrary, it shows that the court considered itself to have ruled, in that any further request, if any were allowed, would require a new filing.

■ The central question, then, is whether, when a timely Rule 4–345(e) motion for reconsideration of sentence has been filed and denied, the court has any authority to change that ruling. It does not.

In *Cardinell v. State,* 335 Md. 381, 644 A.2d 11 (1994), *abrogated on other grounds, State v. Green, supra,* 367 Md. 61, 785 A.2d 1275 (2001), a defendant filed a timely motion to revise sentence under subsection (b) of Rule 4–345, which corresponded to what is now subsection (e) of the rule. The

court denied the motion three months to the date after sentence was imposed. Thereafter, roughly seven months after the imposition of sentence, the defendant filed a "supplemental" motion to revise sentence, which the court granted. The Court of Appeals held that the "supplemental" motion, having been filed outside of the 90–day filing deadline, was ineffective, and the court was without authority to grant it.[9] *Cardinell, 335 Md. at 385–86, 644 A.2d 11; see State v. Kaspar,* 131 Md.App. 459, 463, 749 A.2d 237 (2000), *abrogated on other grounds, State v. Green, supra,* 367 Md. 61, 785 A.2d 1275 ("Despite the labeling of the motion as 'supplemental,' the Court of Appeals [in *Cardinell* ] held that the second motion was untimely and the lower court lacked authority to rule on it").

*Greco v. State,* 347 Md. 423, 701 A.2d 419 (1987), also supports the conclusion that the circuit court did not have authority to revise the sentence in this case based upon the late-filed Second Motion. In that case, the Court addressed the converse proposition to the one here: whether the 90–day filing period in Rule 4–345(e) (then subsection (b)) is triggered anew when a circuit court *grants* a defendant's motion to modify sentence. The circuit court had granted the defendant's timely motion to modify his sentence. Within 90 days thereafter, the defendant filed a second Rule 4–345 motion seeking a further reduction of his new sentence. The circuit court denied that motion because it was not filed within 90 days of the imposition of the original sentence.

The Court of Appeals granted *certiorari* on its own motion and reversed, holding that the second motion had been timely filed. Focusing on the meaning of the word "imposition" in then Rule 4–345(b),[10] it reasoned that, when a timely motion

---

**9.** *In Cardinell* and in the case at bar, there was no allegation that the original sentence was illegal.

**10.** At the time *Greco* was decided, Rule 4–345(b) stated as follows:

(b) **Modification or Reduction–Time For.** The court has revisory power and control over a sentence upon a motion filed within 90 days after its imposition (1) in the District Court, if an appeal has not

filed under that rule is granted, which results in a new sentence being imposed, Rule 4–345 applies to the new sentence. Thus, the 90–day period in which to file a motion to revise sentence under what is now Rule 4–345(e) begins to run anew. Explaining that the second motion did not relate back to the original timely motion, the Court held:

> Consonant with [then] Rule 4–345(b), a criminal defendant may file a request for modification or reduction of sentence within 90 days of the imposition of that sentence. If the sentencing court grants a motion for modification and reduces the sentence, this subsequent sentence then becomes the effective sentence. Thus, a reimposition sentence in these circumstances is the equivalent of an "imposition" of sentence under [then] Maryland Rule 4–345(b). Accordingly, we hold that when a sentencing court grants a timely request for modification or reduction of sentence, the defendant may file another request for modification or reduction of sentence within 90 days of the date of the subsequent imposition of sentence.

*Id.* at 433, 701 A.2d 419 (citations omitted).

In the present case, as in *Cardinell* and unlike in *Greco*, the circuit court *denied* Karmand's First Motion, which was timely filed, whereupon he filed the Second Motion. Because the court's ruling on the First Motion did not result in a new sentence, a new 90–day period did not start to run. And, because the denial of the appellee's First Motion left standing the original sentence, the Second Motion filed more than 90 days after the original imposition of sentence was untimely under Rule 4–345(e).

---

> been perfected, and (2) in a circuit court, whether or not an appeal has been filed. Thereafter, the court has revisory power and control over the sentence in case of fraud, mistake, or irregularity, or as provided in section (d) of this Rule. The court may not increase a sentence after the sentence has been imposed, except that it may correct an evident mistake in the announcement of a sentence if the correction is made on the record before the defendant leaves the courtroom following the sentencing proceeding.

Accordingly, the court lacked authority to grant Karmand's Second Motion.[11]

## II. & III.

The State also contends that the circuit court lacked authority under Rule 4–345(e) to strike Karmand's conviction and sentence and enter a PBJ. It appears that this issue is not preserved for review, as it was not argued below. In any event, our determination that the Second Motion was untimely, and therefore was improperly granted, renders this point moot. Likewise, we do not reach the State's contention that the circuit court's ruling violated Rule 4–243.

---

**11.** The Court in *Cardinell* commented as follows:

> As Judge Digges pointed out for this Court in *Ayre v. State*, 291 Md. 155, 433 A.2d 1150 (1981),
>
>> [i]n Maryland all judgments are under the control of the court during the term in which they are entered, and during that time the court has inherent power to strike out or modify judgments in both civil and criminal cases." *Madison v. State*, 205 Md. 425, 431, 109 A.2d 96, 99 (1954). In the absence of a statute or rule either modifying or rescinding this power, such authority survives.
>
> *Id.* 291 Md. at 159–60, 433 A.2d 1150 (some citations omitted). *See also Christian v. State*, 309 Md. 114, 123, 522 A.2d 945 (1987) (acknowledging the common law doctrine that a court has plenary authority over its judgments and orders during the term in which they are entered).
>
> Assuming, *arguendo*, that this revisory power extends to sentences imposed in criminal cases, and that it has not been supplanted by Rule 4–345,[3] the principle would not be applicable here because sentence was imposed in the September, 1990 term of court, which expired when the new term of court began on the second Monday in March, 1991. The order reducing the sentence was not entered until May, 1991.
>
> ---
>
> [3] *Cf. In re Glenn S.*, 293 Md. 510, 514, 445 A.2d 1029 (1992) (suggesting that the civil rule dealing with the revisory power of the court has supplanted the common law rule in civil cases).
>
> 335 Md. at 385–86, 644 A.2d 11 (one citation omitted).

Likewise in the case at bar, even if the common law doctrine is not supplanted by Rule 4–345, which we doubt, the court's order granting the Second Motion and revising the sentence was not issued during the same term of court as the judgment of conviction by which sentence originally was imposed.

ORDER OF THE CIRCUIT COURT FOR MONTGOM-ERY COUNTY STRIKING APPELLEE'S CONVICTION AND ENTERING PROBATION BEFORE JUDGMENT VACATED. COSTS TO BE PAID BY THE APPELLEE.