978 A.2d 247

**M'Hamed KORTOBI**

v.

**Brian L. KASS, Personal Representative of the Estate of Carver James Leach, Jr., et al.**

**No. 140 Sept.Term, 2008.**

Court of Appeals of Maryland.

Aug. 24, 2009.

Robert Earl Wilson (Wilson & Parlett, Upper Marlboro, MD), on brief, for Petitioner.

Walter E. Gilcrist, Jr. (Anne K. Howard of Budow and Noble, P.C., Bethesda, MD), on brief, for Respondents.

ARGUED BEFORE BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

HARRELL Judge.

We issued a writ of certiorari in this case to determine whether a nonresident decedent's foreign estate is subject to being haled into court in Maryland, for a tort allegedly committed by the decedent during his lifetime in the District of Columbia, solely on the jurisdictional basis that the appointed personal representative of the estate happens to be a Maryland resident who was served with process at his residence. The Court of Special Appeals affirmed the judgment of the Circuit Court for Prince George's County, holding that mere residency of the representative and service in Maryland were too ephemeral for the tort action to be maintained in Maryland. For the reasons that follow, we shall affirm the judgment of the intermediate appellate court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On 6 January 2003, a vehicle operated by Carver James Leach, Jr., struck a vehicle driven by M'Hamed Kortobi in the intersection of 12th Street, N.W., and K Street, N.W., in Washington, D.C. Kortobi allegedly received medical attention for injuries sustained in the collision. At the time of the accident, Kortobi was a resident of Virginia and Leach was a resident of the District of Columbia.

A little over a year after the accident, on 9 January 2004, Leach died from causes unrelated to the 2003 motor vehicle accident. Because he was a resident of D.C. and his assets, including real estate, were located in the District of Columbia, an estate was opened in the Probate Division of the Superior Court of the District of Columbia. Brian L. Kass, Esquire, ultimately was appointed on 19 April 2006 by the probate court as the personal representative of Leach's estate.[1] Kass is an attorney in the firm of Kass, Mitek & Kass, with offices in Washington, D.C. Although he is a resident of Maryland, Kass initiated all of the filings for the Leach Estate from his District of Columbia office. Kass conducted no estate business related to the Leach Estate, in his capacity as personal representative, in the State of Maryland.

As Leach's personal representative, Kass gathered and reported all assets to the Superior Court. Leach's only beneficiaries were Willene C. Leach and Angela Leach, both of whom are residents of the District of Columbia. Leach did not own property in the State of Maryland or in any jurisdiction other than the District of Columbia.

Initially, Kortobi filed a tort action, arising from the 2003 automobile accident, against the Leach Estate and Progres-

---

1. In its reported opinion in this litigation, the Court of Special Appeals stated that "[b]efore his appointment as personal representative, Kass had neither a business nor personal relationship with Leach," and that, at oral argument, the panel of the intermediate appellate court "[was] advised by counsel . . . that the appointment of Kass was suggested by [Kortobi's] counsel in order to establish Maryland jurisdiction for the tort action." *Kortobi v. Kass,* 182 Md.App. 424, 430 n. 1, 957 A.2d 1128, 1131 n. 1 (2008).

sive Casualty Insurance Company[2] in the Superior Court of the District of Columbia, even before Kass' appointment. After the appointment of Kass as the personal representative, Kortobi dismissed the action in the Superior Court, and filed the instant suit in the Circuit Court for Prince George's County.[3] On 15 July 2006, after amending the complaint to sue Kass as the personal representative, Kortobi served Kass, in his capacity as the personal representative of the Leach Estate, at Kass' residence in Howard County, Maryland.

In response, Kass filed, among other things, a motion to dismiss based on lack of personal jurisdiction. The motion was denied by the first judge who considered it. A motion to reconsider the denial was placed before a different judge. After reviewing the parties' initial submissions, the second judge ordered the parties to prepare memoranda addressing the applicability of Md. Code (2001 Repl. Vol.), Estates and Trusts Art., § 5–502(a) (discussed *infra*). Neither party requested an evidentiary hearing, and none was held. The Circuit Court, upon consideration of the parties' papers and the case law deemed applicable, issued a memorandum opinion and order granting Kass' motion to dismiss on the ground of lack of personal jurisdiction, concluding that there was insufficient contact with the State of Maryland to sustain the exercise of personal jurisdiction.

Kortobi pursued an appeal in the Court of Special Appeals. In a reported opinion, the intermediate appellate court affirmed the trial court's judgment, opining that Maryland does

---

2. The Court of Special Appeals noted in its opinion that Progressive Casualty Insurance Company was granted summary judgment by the Circuit Court and did not participate in this appeal. *Kortobi*, 182 Md.App. at 431 n. 2, 957 A.2d at 1132 n. 2. The last observation remains true as to the proceedings before us.

3. In Kortobi's original complaint in the Circuit Court, he named for service a different personal representative than Kass, although that person also was purported to be an attorney, but with an office in Prince George's County. We could find in the record no express explanation for this maneuver, but the larger context suggests the answer.

not have personal jurisdiction over a foreign estate based solely on the Maryland residence of the estate's personal representative. *Kortobi v. Kass,* 182 Md.App. 424, 442–43, 957 A.2d 1128, 1138 (2008). We issued a writ of certiorari upon Kortobi's petition. *Kortobi v. Kass,* 406 Md. 743, 962 A.2d 370 (2008).[4]

## II. STANDARD OF REVIEW

We review the trial court's grant of a motion to dismiss for lack of personal jurisdiction to determine whether the trial court was legally correct in its decision to dismiss the action. *Bond v. Messerman,* 391 Md. 706, 718–19, 895 A.2d 990, 998 (2006) (citing *Beyond Sys., Inc. v. Realtime Gaming Holding Co.,* 388 Md. 1, 29, 878 A.2d 567, 584 (2005); *Jason Pharms., Inc. v. Jianas Bros. Packaging Co.,* 94 Md.App. 425, 434, 617 A.2d 1125, 1129 (1993)).

## III. ANALYSIS

Kortobi does not dispute that the Leach Estate has no contacts with the State of Maryland and that all estate business performed by Kass on behalf of the Estate was performed in the District of Columbia. Rather, Kortobi pins his hopes on two statutory provisions which, he contends, subject Kass, in his capacity as personal representative, to jurisdiction in Maryland. Kortobi argues that the plain language of § 5–502(a) of the Estates and Trusts Article provides that a foreign personal representative may sue and be sued in Maryland. In addition, Kortobi contends that the personal service of Kass at his residence in Maryland gives the Circuit Court jurisdiction pursuant to § 6–102 of the Courts and Judicial Proceedings Article.

---

4. The successful petition for writ of certiorari framed the sole question as follows:

Whether Maryland Courts have jurisdiction over a foreign personal representative sued in Maryland where the foreign personal representative has been properly served in Maryland.

## A. Section 5–502(a) of the Estates and Trusts Article

The parties agree that Kass was viewed properly by the trial court, for purposes of Maryland law, as a foreign personal representative. Foreign personal representatives are the subject of Subtitle 5 of Title 5 of the Estates and Trusts Article. Section 5–502 [5] provides specifically for the powers of foreign personal representatives, stating in subsection (a):

> (a) *In general.*—Any foreign personal representative may exercise in Maryland all powers of his office, and may sue and be sued in Maryland, subject to any statute or rule relating to nonresidents.

Kortobi argues that the plain language of § 5–502(a) endorses that Kass may "be sued in Maryland" in his capacity as the personal representative of the Leach Estate. Kass retorts that the "subject to any statute or rule relating to nonresidents" language of § 5–502(a) sweeps up Maryland's Long–Arm Statute, Md. Code (2006 Repl. Vol. & Supp. 2008), Courts and Judicial Proceedings Art. § 6–103, and that, under Long–Arm Statute jurisprudence, the Leach Estate's contacts with Maryland are insufficient for jurisdiction to lie in Maryland.

 Our polar star in navigating the sometimes treacherous straits of statutory interpretation questions is to ascertain

---

5. The entirety of § 5–502 of the Estates and Trusts Article provides:

> (a) *In general.*—Any foreign personal representative may exercise in Maryland all powers of his office, and may sue and be sued in Maryland, subject to any statute or rule relating to nonresidents.
>
> (b) *Transfer of real property.*—A foreign personal representative has the same power to sell, mortgage, lease, convey, or otherwise transfer or assign real property or an interest in the property which is located in Maryland as a Maryland personal representative has with respect to real property and an interest in the property.
>
> (c) *Same—Failure to comply with requirements of appointing jurisdiction.*—Title to real property or an interest in the property located in Maryland sold, mortgaged, leased, conveyed, or otherwise transferred or assigned by a foreign personal representative before or after July 1, 1981, may not be defective solely by reason of the failure of the foreign personal representative to comply with requirements of the jurisdiction in which the representative was appointed concerning the sale, mortgage, lease, conveyance, transfer, or assignment of the property or an interest in the property.

and effectuate the intent of the Legislature. *Tribbitt v. State,* 403 Md. 638, 645, 943 A.2d 1260, 1264 (2008). Statutory construction "begins with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology." *Bowen v. City of Annapolis,* 402 Md. 587, 613, 937 A.2d 242, 257 (2007) (quoting *Kushell v. Dep't of Natural Res.,* 385 Md. 563, 576, 870 A.2d 186, 193 (2005)). "When construing a statute, we recognize that it 'should be read so that no word, clause, sentence or phrase is rendered superfluous or nugatory.' " *Collins v. State,* 383 Md. 684, 691, 861 A.2d 727, 732 (2004) (quoting *James v. Butler,* 378 Md. 683, 696, 838 A.2d 1180, 1187 (2003); *Condon v. State,* 332 Md. 481, 491, 632 A.2d 753, 757 (1993)). We will "neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute." *Price v. State,* 378 Md. 378, 387, 835 A.2d 1221, 1226 (2003) (citing *County Council v. Dutcher,* 365 Md. 399, 417, 780 A.2d 1137, 1147 (2001)).

If the plain language of the statute is unambiguous, "the inquiry as to legislative intent ends; we do not then need to resort to the various, and sometimes inconsistent, external rules of construction, for 'the Legislature is presumed to have meant what it said and said what it meant.' " *Arundel Corp. v. Marie,* 383 Md. 489, 502, 860 A.2d 886, 894 (2004) (quoting *Toler v. Motor Vehicle Admin.,* 373 Md. 214, 220, 817 A.2d 229, 233 (2003)). If, however, the meaning of the plain language is ambiguous or unclear, "we seek to discern legislative intent from surrounding circumstances, such as legislative history, prior case law, and the purposes upon which the statutory framework was based." *Lewis v. State,* 348 Md. 648, 653, 705 A.2d 1128, 1131 (1998) (citing *Haupt v. State,* 340 Md. 462, 471, 667 A.2d 179, 183 (1995)). "We have said that ambiguity exists within a statute when there are 'two or more reasonable alternative interpretations of the statute.' " *Melton v. State,* 379 Md. 471, 477, 842 A.2d 743, 746 (2004) (quoting *Price,* 378 Md. at 387, 835 A.2d at 1226).

Application of the language of Estates and Trusts § 5-502(a) that "[a]ny foreign personal representative may ... be

sued in Maryland, subject to any statute or rule relating to
nonresidents" is neither plain nor clear to us when the foreign
personal representative happens to be a Maryland resident.
Thus, we turn to the legislative history of Estates and Trusts
§ 5–502(a) in a search for guidance as to legislative intent for
application of the statutory provision in the particular situa-
tion before us in this case. Section 5–502 formerly was
Maryland Code (1957, 1969 Repl. Vol.), Article 93,[6] § 5–502.[7]
The comment accompanying former § 5–502 in Article 93 is
instructive:

> This Section adopts the basic theory of The Uniform Powers
> of Foreign Representatives Act. Its adoption supplants the
> rules in former §§ 83–85. See Sykes, §§ 471 through 473.
> The new statute also repeals § 87, which gave to District of
> Columbia personal representatives certain powers given to
> Maryland personal representatives. *The powers of a Dis-*
> *trict of Columbia or any foreign representative will now be*
> *governed by the laws of the jurisdiction in which he was*
> *appointed.*

(emphasis added). That comment suggests that the language
"of his office" in § 5–502 should be interpreted as meaning
that a foreign personal representative is bestowed with the

---

6. The recodification of Maryland laws relating to testamentary matters
came about due to the recommendations of the Henderson Commission
in its Second Report, dated 5 December 1968, titled "Second Report of
the Governor's Commission to Review and Revise the Testamentary
Law of Maryland: Article 93: Decedents' Estates." *See* Shale D. Stiller
& Roger D. Redden, *Statutory Reform in the Administration of Estates of
Maryland Decedents, Minors and Incompetents*, 29 MD. L. REV. 85, 86–
89 (1969); *see also Piper Rudnick LLP v. Hartz*, 386 Md. 201, 222, 872
A.2d 58, 71 (2005) ("In 1969, pursuant to the Henderson Commission's
recommendations, the General Assembly repealed most of Article 93,
moved the remainder to a new Article 93, and enacted a replacement
Article 93.").

7. Maryland Code (1957, 1969 Repl. Vol.), Article 93 § 5–502 provided,
in its entirety:

> Any foreign personal representative may exercise in Maryland all
> powers of his office, and may sue and be sued in Maryland, subject to
> any statute or rule relating to nonresidents.

same powers, capable of being exercised in Maryland, as he or she has in the jurisdiction in which he or she was appointed. Thus, the legislative scheme contemplates that the foreign personal representative's powers be determined according to the laws of the appointing jurisdiction, taking no consideration of the personal residence of the representative. Thus, we examine the laws of the District of Columbia that provide for the powers and authority of a personal representative.[8]

The powers and authority of a personal representative under District of Columbia law are provided in Title 20, Chapter 7 of the D.C.Code. Of particular relevance to the present case, D.C.Code Ann. § 20–701(c) (LexisNexis 2009)[9] provides:

---

**8.** Implicit in our analysis is the understanding that the "powers" of a foreign personal representative described in Trusts and Estates § 5–502 includes the power to "be sued." Trusts and Estates § 5–502 is titled "Powers of foreign personal representative," and thus, consistent with the language of subsection (a) of § 5–502, we interpret the language "may ... be sued in Maryland" in the same manner as with any affirmative power of the personal representative.

**9.** D.C.Code, § 20–701 provides in its entirety:

(a) A personal representative, whether supervised or unsupervised, is a fiduciary who, in addition to the specific duties expressed in this title, is under a general duty to settle and distribute the estate of the decedent in accordance with the terms of the will or laws relating to intestacy and this title, as expeditiously and efficiently as is prudent and consistent with the best interests of the persons interested in the estate. Such representative shall use the authority conferred by this title, by the terms of the will, if any, by any order in proceedings to which such representative is a party, and by the equitable principles generally applicable to fiduciaries, fairly considering the interests of all interested persons and creditors whose claims have been allowed.

(b) A personal representative shall not be surcharged for acts of administration or distribution if the conduct in question was authorized at the time. Subject to other obligations of administration and to special duties applicable in cases of supervised administration, a will probated in abbreviated or standard probate proceedings is authority to administer and distribute the estate according to its terms. An order of appointment of a personal representative, whether issued in abbreviated or standard probate proceedings, is authority to distribute apparently intestate assets to the heirs of the decedent if, at the time of distribution, the personal representative is not aware of a pending probate proceeding, a proceeding to vacate an order

(c) Except as to proceedings which do not survive the death of the decedent, a personal representative of a decedent domiciled in the District of Columbia at his death has the same standing to sue and be sued in the courts of this and any other jurisdiction as the decedent had immediately prior to death.

Applying the laws of the District of Columbia in light of the instructive comment to former § 5-502, Kass, in his capacity as the personal representative of the Leach Estate, would have the same standing to "sue and be sued" as Leach had immediately prior to his death. Therefore, for purposes of jurisdictional analysis under D.C. law, Kass stands in the shoes of Leach. The issue then becomes whether Kortobi could have sued Leach in Maryland for the injuries he allegedly suffered in the District of Columbia car accident. In other words, was Leach subject to personal jurisdiction in Maryland for the alleged tort prior to his death?

■ A threshold issue we must address before turning to the personal jurisdiction analysis is the meaning of the language in Estates and Trusts § 5-502 that a foreign personal representative may be sued in Maryland "subject to any statute or rule relating to nonresidents." Kass argues that the language "subject to any statute or rule relating to nonresidents" includes, among other things, the Maryland Long-Arm Statute, § 6-103 of the Courts and Judicial Proceedings Article. Kortobi does not dispute Kass' contention, arguing only that the plain language of Estates and Trusts

---

entered in an earlier probate proceeding, a proceeding questioning his appointment or fitness to continue, or a supervised administration proceeding. Nothing in this section affects the duty of the personal representative to administer and distribute the estate in accordance with the rights of claimants of an allowed claim, the surviving spouse, any minor and dependent children, and any pretermitted child of the decedent as described elsewhere in this title.

(c) Except as to proceedings which do not survive the death of the decedent, a personal representative of a decedent domiciled in the District of Columbia at his death has the same standing to sue and be sued in the courts of this and any other jurisdiction as the decedent had immediately prior to death.

§ 5–502 authorizes the exercise of personal jurisdiction over Kass in Maryland.

The legislative history of the change in the law implemented by Estates and Trusts § 5–502 supports Kass' argument. As the comment accompanying former § 5–502 in Article 93 indicated, § 5–502 "adopt[ed] the basic theory of The Uniform Powers of Foreign Representatives Act." That basic theory was that the revised statute now would give foreign personal representatives the power to sue in Maryland without having to open an ancillary administration. *See* Stiller & Redden, *supra* note 6, at 104–06.[10] Thus, the Legislature, consistent with the Henderson Commission's recommendations, adopted former § 5–502 in Article 93 to revise the law so that it would be consistent with the approach taken in the Uniform Powers of Foreign Representatives Act.[11]

---

**10.** As Stiller & Redden explained:

The requirement that a foreign personal representative take out ancillary letters has been eliminated. The Maryland law has never been particularly clear with respect to the circumstances under which ancillary letters were required to be obtained. The requirement that a foreign personal representative take out letters in Maryland was generally based on four theories: (1) foreign personal representatives have no power to sue or otherwise to act in Maryland without first obtaining authority from a Maryland court; (2) local creditors will be protected by being afforded an opportunity to file claims against the Maryland estate when the Maryland letters are obtained; (3) letters should be obtained to enable the foreign personal representative to deal with Maryland real estate[;] and (4) letters should be obtained to afford the Maryland taxing authorities a better opportunity to collect Maryland death taxes due with respect to Maryland assets.

Stiller & Redden, *supra* note 6, at 104 (footnotes omitted).

**11.** Stiller & Redden added:

The Governor's Commission felt that the most desirable method of handling these problems would be the establishment of a simple statutory pattern duly protective of (1) Maryland creditors, including the tax authorities, if the decedent owned real or leasehold property in Maryland, and (2) Maryland debtors of non-resident decedents, and which would at the same time insure full disclosure in the land records. Section 5–501 of new Article 93 states that "a foreign personal representative shall not be required to take out letters in Maryland for any purpose." Section 5–502 sets forth the rule that: "Any foreign personal representative may exercise in Maryland all

The parallel section that former Article 93, § 5–502 drew upon in the Uniform Powers of Foreign Representatives Act was Section 2. That Section provided:

> Section 2. *(Powers of Foreign Representative in General.)*
>
> When there is no administration or application therefor pending in this state, a foreign representative may exercise all powers which would exist in favor of a local representative, and may maintain actions and proceedings in this state subject to the conditions imposed upon nonresident suitors generally.

BANKS MCDOWELL, JR., FOREIGN PERSONAL REPRESENTATIVES 194 (1957) (quoting HANDBOOK OF THE NAT'L CONFERENCE OF COMM'RS ON UNIF. STATE LAWS 325 (1944)). Notably, the Maryland Legislature's version of the powers of foreign personal representatives in § 5–502[12] departs from the version presented in the Uniform Act in a significant way—the Legislature's version included the additional language (when enumerating the powers authorized) that the foreign personal representative may "be sued." While expanding this "power" of foreign personal representatives via statute, the Legislature was careful to articulate the conditions qualifying its reach. The Legislature did not employ language similar to the Uniform Act's "subject to the conditions imposed upon nonresident suitors generally." Rather, the Legislature's version employed the language "subject to any statute or rule relating to nonresidents," which, unlike the Uniform Act, does not contain a specific reference to the nonresident representative's role as a party in court proceedings.[13] Thus, "subject to any

---

> powers of his office, and may sue and be sued in Maryland, subject to any statute or rule relating to non-residents."
> Stiller & Redden, *supra* note 6, at 105.

**12.** The language of the original version of § 5–502 adopted by the Maryland Legislature, *see supra* note 7, now codified in subsection (a) of Estates and Trusts § 5–502, remains unchanged. *See* Md. Code, Estates and Trusts Art., § 5–502(a); Stiller & Redden, *supra* note 6, at 105.

**13.** Black's Law Dictionary defines "suitor," in pertinent part, as "[a] party that brings a lawsuit; a plaintiff or petitioner." BLACK'S LAW DICTIONARY 1572 (9th ed. 2009).

statute or rule relating to nonresidents" could be interpreted to mean that "any statute or rule relating to nonresidents" should apply both to the situation in which the foreign representative is suing and the situation in which the personal representative is sued.[14] Given that the Maryland Legislature employed more general, non-party-specific language in the qualifying condition when expanding the "powers" of a foreign representative to include the power to "be sued," we agree with Kass that the conditional "subject to any statute or rule relating to nonresidents" includes, among other things, the Maryland Long–Arm Statute,[15] to which we now turn.

### B. Sections 6–102 and –103 of the Courts and Judicial Proceedings Article and Personal Jurisdiction

Personal jurisdiction in Maryland is governed by, among other things, Md. Code, (2006 Repl. Vol. & Supp. 2008), Courts & Judicial Proceedings Art. § 6–102. That section provides:

(a) *Basis of personal jurisdiction.*—A court may exercise personal jurisdiction as to any cause of action over a person domiciled in, served with process in, organized under the laws of, or who maintains his principal place of business in the State.

(b) *Exercise of jurisdiction on other basis.*—This section does not limit any other basis of personal jurisdiction of a court of the State.

---

**14.** A discussion clarifying the semantics of § 5–502(a)'s term "nonresidents" in the context of a resident of Maryland being sued *in his capacity as a foreign personal representative* is contained *infra* Part III.B.

**15.** Although not adopted in Maryland, the Uniform Probate Code's analogous provision, § 4–205, to Estates and Trusts § 5–502 contains language supportive of our interpretation:

A domiciliary foreign personal representative who has complied with Section 4–204 may exercise as to assets in this state all powers of a local personal representative and may maintain actions and proceedings in this state *subject to any conditions imposed upon nonresident parties generally.*

Unif. Probate Code § 4–205 (2008) (emphasis added).

Personal jurisdiction in Maryland over nonresident defendants is provided for in Maryland's Long–Arm Statute, Courts & Judicial Proceedings Art. § 6–103. That section provides, in pertinent part:

(a) *Condition.*—If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.

(b) *In general.*—A court may exercise personal jurisdiction over a person, who directly or by an agent:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply goods, food, services, or manufactured products in the State;

(3) Causes tortious injury in the State by an act or omission in the State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other pertinent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

(5) Has an interest in, uses, or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed with the State at the time the contract is made, unless the parties otherwise provide in writing.

In determining whether a Maryland court may exercise personal jurisdiction over a foreign defendant, we engage in a dual inquiry, considering if the exercise of jurisdiction (1) –15–is authorized under Maryland's Long–Arm Statute, Md.Code, Courts & Judicial Proceedings Art. § 6–103, and (2) comports with the due process requirements of the Fourteenth Amendment. *Beyond Sys., Inc.,* 388 Md. at 14–15, 878 A.2d at 575–76 (citations omitted). "The purview of the long arm statute is coextensive with the limits of personal

jurisdiction set by the due process clause of the Federal Constitution." *Id.* at 15, 878 A.2d at 576. As a result, "our statutory inquiry merges with our constitutional examination." *Id.* at 22, 878 A.2d at 580.

In order to pass constitutional muster under the Due Process Clause, a foreign defendant must have "minimum contacts" with Maryland, such that exercise of personal jurisdiction in Maryland "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within [Maryland], thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) (citing *Int'l Shoe Co.*, 326 U.S. at 319, 66 S.Ct. 154). While the "nature" of the defendant's contacts with Maryland are important, *see Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416–19, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), we must additionally consider "the relationship among the defendant, the forum, and the litigation," *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), to determine whether the defendant "should reasonably anticipate being haled into court" in Maryland. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

"Ordinarily, cases involve either 'general jurisdiction' where the cause of action is unrelated to the defendant's contact with [Maryland], or 'specific jurisdiction' where the cause of action arises out of the defendant's contacts with [Maryland]." [16] *Miserandino v. Resort Props., Inc.*, 345 Md.

---

**16.** As we explained in *Camelback Ski Corp. v. Behning*, 312 Md. 330, 539 A.2d 1107 (1988), however, some cases do not fit "neatly" into one or the other category:

The concept of specific and general jurisdiction is a useful tool in the sometimes difficult task of detecting how much contact is enough,

43, 50, 691 A.2d 208, 211 (1997) (citing *Camelback Ski Corp. v. Behning*, 312 Md. 330, 338, 539 A.2d 1107, 1111 (1988)). As we reiterated in *Miserandino,*

> Generally speaking, when the cause of action does not arise out of, or is not directly related to, the conduct of the defendant within the forum, contacts reflecting continuous or systematic ... conduct will be required to sustain juris- diction. On the other hand, when the cause of action arises out of the contacts that the defendant had with the forum, it may be entirely fair to permit the exercise of jurisdiction as to that claim.

*Id.* (quoting *Camelback Ski Corp.*, 312 Md. at 338–39, 539 A.2d at 1111). In any event, "[t]o exercise either general or specific jurisdiction, the defendant must maintain sufficient minimum contacts with the forum such that the exercise of jurisdiction meets the 'general test of essential fairness.'" *Republic Props. Corp. v. Mission W. Props., LP*, 391 Md. 732, 760, 895 A.2d 1006, 1022 (2006) (quoting *Presbyterian Univ. Hosp. v. Wilson*, 337 Md. 541, 552, 654 A.2d 1324, 1330 (1995)).

Kortobi, similar to his argument under Estates and Trusts § 5–502, contends that the plain language of Courts and Judicial Proceedings § 6–102 confers personal jurisdiction in Maryland over Kass because Kass resides in Maryland and was served with process at his residence. Kass responds that Courts and Judicial Proceedings § 6–102 does not apply in the present case because he was sued, and was served with process in that suit, in his capacity as a foreign personal representative. Kass maintains that the analysis of personal jurisdiction is dictated by Maryland's Long–Arm Statute, Courts and Judicial Proceedings § 6–103, and that, under the

---

and most cases will fit nicely into one category or the other. If, however, the facts of a given case do not naturally place it at either end of the spectrum, there is no need to jettison the concept, or to force-fit the case. In that instance, the proper approach is to identify the approximate position of the case on the continuum that exists between the two extremes, and apply the corresponding standard, recognizing that the quantum of required contacts increases as the nexus between the contacts and the cause of action decreases.

*Id.* at 339, 539 A.2d at 1111.

Statute, neither Leach nor his Estate had the requisite contact with Maryland to satisfy the dual inquiry. We agree with Kass.

 As we noted previously, under Estates and Trusts § 5–502(a), Kass derives primarily the authority and powers "of his office", i.e., as the personal representative of the Leach Estate, from the laws of the District of Columbia. Under D.C.Code § 20–701(c), Kass has the same standing to be sued in "[Maryland] as [Leach] had immediately prior to death." In other words, under this statutory scheme, Kass stands in the shoes of Leach for purposes of personal jurisdiction, regardless of Kass' personal residency in Maryland. Thus, in suing Kass in his representative capacity as a foreign personal representative, Kortobi is suing a nonresident defendant.

That Kass' Maryland residency may not be deemed to confer personal jurisdiction over him in Maryland, in his representative capacity, under either Courts and Judicial Proceedings § 6–102 or under the theory of general jurisdiction, is supported directly by the United States Court of Appeals for the Fifth Circuit's decision in *Religious Technology Center v. Liebreich,* 339 F.3d 369 (5th Cir.2003). In applying the Texas Long–Arm Statute, the Fifth Circuit reversed the federal district court's holding that personal jurisdiction over the representative of the Florida estate lies in Texas based on the personal representative's Texas residency:

Because the Texas Long Arm Statute is coextensive with the confines of due process, questions of personal jurisdiction in Texas are generally analyzed entirely within the framework of the Constitutional constraints of Due Process. *See Texas Long Arm Statute, Tex. Civ. Prac. & Rem.Code Ann. § 17.041* (Vernon 2001) *et seq.; Gessmann v. Stephens,* 51 S.W.3d 329, 335 (Tex.App.2001); [*Interfirst Bank Clifton v.*] *Fernandez,* 844 F.2d [279] at 282 [(1988)].

However, exercising personal jurisdiction over an estate which is probated in a foreign district presents particular jurisdictional problems. Usually when a court exercises jurisdiction over either a foreign or domestic estate the

jurisdiction is *in rem*—that is, the court has jurisdiction over the property itself. Here, however, there is no question that the district court lacked *in rem* jurisdiction over the Estate. Instead, the contention here is that Liebreich, as the personal representative of the Estate, created *in personam* jurisdiction over the Estate. There are two ways in which Liebreich might have brought the Estate into the reach of the district court, and both avenues have been presented to this Court. First, the district court found general jurisdiction over the Estate via Liebreich. Morever, RTC argues that Liebreich created specific jurisdiction over the Estate. However, neither general nor specific jurisdiction existed over the Estate. . . .

The district court correctly found that it had general jurisdiction over Liebreich as a resident of Texas. However, the district court impermissibly imputed that general personal jurisdiction to the Estate. The district court stated, "there can be no doubt that as a resident of the State of Texas, Ms. Liebreich has had sufficient contacts with the state to confer general jurisdiction over her in this matter, both in her individual and representative capacities." Thus, the district court concluded that the general jurisdiction which a Texas court has over a Texas resident applies equally to a foreign estate whose representative lives in Texas. However, the district court is in error on this point.

General jurisdiction exists where a "defendant's contacts with the forum state are substantial and continuous and systematic but unrelated to the instant cause of action." *Central Freight Lines*, 322 F.3d [376] at 381 [(2003)] (internal quotations omitted); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). The residency of a defendant in the forum state routinely creates such systematic and continuous contact. In the instate case, however, the defendant in question is not a resident of Texas. As a creature of the Florida probate regime, the Estate resides in Florida. Thus, for an estate probated in a foreign jurisdiction to establish the type of continuous and systematic contact necessary for

general jurisdiction, the representative of the Estate must have made those contacts in her representative capacity, on behalf of the Estate. It is not sufficient that the personal representative herself lives in Texas.

*Religious Tech. Ctr.*, 339 F.3d at 373–74. In accordance with *Religious Technology Center*, we conclude that, in suing Kass in his capacity as personal representative of the Leach Estate, Kortobi sued a nonresident defendant, and therefore Courts and Judicial Proceedings § 6–102 does not apply. Thus, personal jurisdiction over Kass, as a foreign personal representative, may lie in Maryland only under the Maryland Long–Arm Statute, Courts and Judicial Proceedings § 6–103 (consistent with due process requirements).[17]

The only contacts with Maryland upon which Kortobi relies are Kass' personal residence in Maryland, and his being served with process there. Having rejected Kortobi's claim that these fortuitous circumstances are sufficient for personal jurisdiction to lie in Maryland under § 6–102, we likewise find that there are insufficient contacts for jurisdiction under Maryland's Long–Arm Statute, § 6–103. The record is devoid of any evidence that either Leach, or Kass acting on behalf of the

---

**17.** Although not adopted in Maryland, as noted previously, the Uniform Probate Code contains a provision endorsing the notion that it is the contacts, or lack thereof, a foreign personal representative has with the foreign forum that determines whether personal jurisdiction lies in that forum, regardless of the personal residency of the representative. Section 4–301 of the Uniform Probate Code provides:

A foreign personal representative submits personally to the jurisdiction of the Courts of this state in any proceeding relating to the estate by (1) filing authenticated copies of his appointment as provided in Section 4–204, (2) receiving payment of money or taking delivery of personal property under Section 4–201, or (3) *doing any act as a personal representative in this state which would have given the state jurisdiction over him as an individual.* Jurisdiction under (2) is limited to the money or value of personal property collected.

(emphasis added). Section 4–302 of the Uniform Probate Code grants, as an additional basis for jurisdiction, the same basis granted in D.C.Code § 20–701(c):

In addition to jurisdiction conferred by Section 4–301, a foreign personal representative is subject to the jurisdiction of the courts of this state to the same extent that his decedent was subject to jurisdiction immediately prior to death.

Estate, established minimum contacts with Maryland, or that either purposefully availed himself of its laws. We reiterate that: (1) Leach was domiciled in the District of Columbia; (2) all of his assets, both real and personal, were located in the District of Columbia; (3) the beneficiaries of the Estate are residents of the District of Columbia; and (4) the motor vehicle accident giving rise to the present dispute occurred in the District of Columbia. There is simply no basis from which to conclude that jurisdiction lies in Maryland over the Leach Estate for the purposes of Kortobi's motor tort action.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.**