26 A.3d 856

**Zvi GUTTMAN, Trustee, et. al.**

v.

**WELLS FARGO BANK, et. al.**

**Misc. No. 20, Sept. Term, 2010.**

Court of Appeals of Maryland.

Aug. 16, 2011.

Timothy F. Maloney (Joseph M. Creed of Joseph, Greenwald & Laake, P.A., Greenbelt, MD), on brief, for appellants.

M. Elizabeth Nowinski (Ira L. Oring of Fedder and Garten Professional Association, Baltimore, MD), on brief, for appellees.

Thomas C. Valkenet (Young & Valkenet, Baltimore, MD), on brief, for appellees.

F. Robert Troll, Jr., Esq., Susan Zuhowski, Esq., O'Malley, Miles, Nylen & Gilmore, P.A., Beltsville, MD, for Amicus Curiae brief of the Maryland Land Title Association.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

HARRELL, J.

The United States Bankruptcy Court for the District of Maryland certified, and this Court accepted, four questions pertaining to Maryland Code (1974, 2010 Repl.Vol.), Real

Property Article, § 4–109.[1]  Secured parties, as creditors in the bankruptcy proceedings and Appellees here, are attempting, in separate cases before the Bankruptcy Court, to execute on four deeds of trust whose affidavits of considerations (and/or acknowledgments contained therein) are missing or improper.   Appellants, the four trustees in bankruptcy here, argue that these defects render the deeds of trust invalid, such that the trustees possess the properties free and clear of Appellees' interests.   The creditors counter, however, that § 4–109 cures the defects at issue.

The Franciscan friar William of Occam commended—transposed to modern syntax—that "the simplest of competing theories [is] preferred to the more complex. . . ." *Merriam–Webster Dictionary Online,* http://www.merriam-webster.com/dictionary-tb/occam's + razor (last visited 18 July 2011).   William of Occam's wisdom supplies yet another reason why, in cases of statutory construction, the plain language of a statute is the first tool for which we reach.   Invoking "Occam's razor" here, we hold that—pursuant to the plain language of the statute (and as confirmed by legislative history)—§ 4–109 contemplates curing defects like those in the present case (absent a judicial challenge lodged within six months of recordation of the deeds).   Thus, we answer in the affirmative each of the four certified questions.

### I.

According to Md.Code (1974, 2006 Repl.Vol.), Courts and Judicial Proceedings Article, § 12–606, this Court, in answering certified questions, is bound by the facts set forth in the certification order.   *Piselli v. 75th St. Med.,* 371 Md. 188, 202, 808 A.2d 508, 516 (2002).   The Bankruptcy Court provided the following factual statement in the certification order:[2]

---

[1.]  Unless otherwise stated, all statutory references in this opinion are to the Real Property Article of the Maryland Code.

[2.]  Neither party contests the accuracy of the Bankruptcy Court's factual statement.

Numerous adversary proceedings have been filed by trustees in Chapter 7 bankruptcy cases asserting similar facts as to missing or defective affidavits of consideration contained upon recorded deeds of trust. The four adversary proceedings captioned above have been consolidated to facilitate a coordinated disposition of common issues of Maryland law as to the legal effect (or lack thereof) of deeds of trust that contain no affidavit of consideration, or that contain incomplete forms of affidavit.

In each adversary proceeding, the trustee seeks to avoid the transfer of a lien by the subject deed of trust pursuant to 11 U.S.C. § 544 asserting that, as a consequence of a defective or missing affidavit of consideration, the deed of trust is void as to a subsequent bonafide purchaser. A motion to dismiss has been filed in each adversary proceeding disputing the trustee's cause of action upon the basis that the lack of affidavit of consideration or missing information in the affidavit is cured pursuant to Md.Code Ann. Real Property Section 4–109.

\* \* \*

In adversary proceeding no. 09–0336–NVA ["AP 1"], the Trustee alleges, and it does not appear to be seriously disputed, that the deed of trust, which was executed on or about October 27, 2004 and recorded on or about November 24, 2004, fails to contain an affidavit of consideration as required by Maryland Law. *See* Md.Code Real Property Ann. § 4–106 (stating that no mortgage or deed of trust is valid without an affidavit of consideration except as between the parties to it).

In adversary proceeding no. 10–0221–NVA ["AP 2"], the Trustee alleges, and it does not appear seriously disputed, and the deed of trust, which was executed on or about September 16, 2004 and recorded on October 29, 2004[,] contains an imprinted form affidavit of consideration but has the borrower/grantor's name erroneously filled in as the affiant agent for the secured party.

In adversary proceeding no. 10–0364DK ["AP 3"], the Trustee alleges, and it does not appear seriously disputed, that the deed of trust, which was executed on or about June 6, 2008 and recorded on June 11, 2008[,] contains a blank imprinted form of affidavit with no information filled in (including date, state of notary public, name of affiant and expiration date of a notary public's commission). The blank form is unsigned and has no notary seal.

In adversary proceeding no. 10–0423DK ["AP 4"], the Trustee alleges, and it does not appear seriously disputed, that the deed of trust, which was executed on or about November 27, 2006 and recorded on or about January 24, 2007[,] contains a form affidavit of consideration with the date and notary information filled in and contains a signature and seal of the notary, but with no name of an affiant set forth where required.

In each adversary proceeding the defendant has moved to dismiss the Complaint and argues that the curative statute, Md.Code Real Property Section 4–109(b) renders the lack of an affidavit of consideration, or the incomplete or defective affidavit, cured and the respective deed of trust enforceable as to a subsequent bonafide purchaser. That section provides:

(b) Defective grants recorded on or after January 1, 1973.—If an instrument is recorded on or after January 1, 1973, whether or not the instrument is executed on or after that date, any failure to comply with the formal requisites listed in this section has no effect unless it is challenged in a judicial proceeding commenced within six months after it is recorded.

(c) Failures in formal requisites of an instrument.—For the purposes of this section, the failures in the formal requisites of an instrument are:

(1) A defective acknowledgment;

(2) A failure to attach any clerk's certificate;

(3) An omission of a notary seal or other seal;

(4) A lack of or improper acknowledgment or affidavit of consideration, agency, or disbursement; or

(5) An omission of an attestation.

The defendants seek dismissal on the basis that the foregoing section bars the trustees' actions against defendants because the actions were not brought within six months of recordation. Accordingly, it is argued, the actions are time-barred and any failure as to the affidavits of consideration, including its complete absence, have been cured by the passage of time and Maryland law.

The following four questions were certified by the Bankruptcy Court and accepted by this Court for review:

1. Where a deed of trust is recorded without an affidavit of consideration as required by Md.Code Ann. Real Property Section 4–106, is the defect cured by the application of Md.Code Ann. Real Property Section 4–109 if there is no judicial challenge to the validity of the deed of trust within six months?

2. Where a deed of trust is recorded with an affidavit of consideration wrongly identifying the borrower as the affiant, is the defect cured by the application of Md.Code Ann. Real Property Section 4–109 if there is no judicial challenge to the validity of the deed of trust within six months?

3. Where a deed of trust is recorded with an affidavit of consideration of affidavit [*sic*] printed but containing no information on [*sic*] attestation, is the defect cured by the application of Md.Code Ann. Real Property Section 4–109 if there is no judicial challenge to the validity of the deed of trust within six months?

4. Where a deed of trust is recorded with an affidavit of consideration with a form affidavit that contains no identification of an affiant, is the defect cured by the application of Md.Code Ann. Real Property Section 4–109 if there is no judicial challenge to the validity of the deed of trust within six months?

We hold that § 4–109 is unambiguous, curing the type of defects identified by the trustees, i.e., missing or improper

affidavits or acknowledgments, unless a timely judicial challenge is mounted. The legislative history surrounding the enactment of this curative statute also supports this holding. We explain.

## II.

### A. The Plain Language of § 4–109 Operates to Cure the Defects in the Present Case.

The goal in statutory interpretation is to divine the intent of the Legislature. *See Kortobi v. Kass,* 410 Md. 168, 176–77, 978 A.2d 247, 252 (2009). In this endeavor, we turn initially (and often only) to the plain language of the statute; if the Legislature resolved the present dispute through the plain words of the statute, we are not obliged to consult other sources of legislative history. *See Price v. State,* 378 Md. 378, 387, 835 A.2d 1221, 1226 (2003) ("[A]ll statutory interpretation begins, and usually ends, with the statutory text itself . . ., for the legislative intent of a statute primarily reveals itself through the statute's very words . . . ." (citations omitted)). We are not free to disregard clear statutory instructions and rely instead upon contrary legislative history, *even where we disagree with the Legislature* as to the "fairest" or "best" disposition of the case. *See Stanley v. State,* 390 Md. 175, 184, 887 A.2d 1078, 1083 (2005) ("Even if it may be, to us, illogical and irrational, there is no basis for the Court to refuse to give effect to the clear direction of the General Assembly."); *Dep't of Motor Vehicles v. Greyhound Corp.,* 247 Md. 662, 668, 234 A.2d 255, 258 (1967) ("[I]f the legislative intent is expressed in clear and unambiguous language, this will be carried into effect by this Court even if this Court might be of the opinion that the policy of the legislation is unwise, or even harsh or unjust . . . ." (internal quotation marks and citations omitted)). Stated another way, if a plain reading of the statute disposes of the case at hand, our "inquiry as to legislative intent ends; we do not . . . resort to the various, and sometimes inconsistent external rules of construction, for 'the Legislature is presumed to have meant what it said and said what it

meant.' " *Arundel Corp. v. Marie,* 383 Md. 489, 502, 860 A.2d 886, 894 (2004) (quoting *Toler v. Motor Vehicle Admin.,* 373 Md. 214, 220, 817 A.2d 229, 233 (2003)).

The statute central to the certified questions states that, for instruments recorded on or after January 1, 1973, "any failure to comply with the formal requisites listed in this section has no effect unless it is challenged in a judicial proceeding commenced within six months after it is recorded." § 4–109(b). Section 4–109(c) lists, most helpfully, the "failures in the formal requisites of an instrument" cured by the statute:

(1) A defective acknowledgment;

(2) A failure to attach any clerk's certificate;

(3) An omission of a notary seal or other seal;

(4) *A lack of or improper* acknowledgment or *affidavit of consideration,* agency, or disbursement;

(5) An omission of an attestation.

(Emphasis added.) Read in accordance with an ordinary understanding of the English language, *see Kortobi,* 410 Md. at 176, 978 A.2d at 252 ("[O]rdinary, popular understanding of the English language dictates interpretation of [statutory] terminology."), § 4–109(c)(4) identifies four curable defects: (a) a lack of an acknowledgment; (b) a lack of an affidavit of consideration; (c) an improper acknowledgment; and (d) an improper affidavit of consideration.

Before deciding whether § 4–109 applies to cure these defective "formal requisites," we must consider if and when the trustees asserted any relevant judicial challenge—if the trustees challenged the validity of the instruments within the six month window, then the statute is ineffective here. In these four bankruptcy proceedings, the certifying court represents that no judicial challenge was made to the validity of the deeds within the prescribed time limit. The question devolves then to whether the defects in these proceedings are of the type identified and cured by the statute. The answer is "Yes." We agree with the creditors that § 4–109(c)(4) cures the "absence of an affidavit of consideration," as well as "missing

element[s] of an incomplete or mistaken affidavit." To be specific:

- In AP 1, the deed lacks an affidavit of consideration (curable defect (b) *supra* ).
- In AP 2, the deed has an affidavit of consideration, but the affidavit contains an improper acknowledgment—the name of the borrower is filled in erroneously for the name of the affiant agent (who represents the secured party) (curable defect (c) *supra* ).
- In AP 3, the deed has an affidavit of consideration, but the affidavit lacks most information, including acknowledgments (curable defects (a) and (d) *supra* ).
- In AP 4, the deed has an affidavit of consideration, but the affidavit lacks an acknowledgment—the name of the affiant (curable defect (a) *supra* ).

The trustees characterize the defects in a fundamental way, describing AP 1 as "completely lack[ing] an affidavit," and AP 2 through 4 as "lack[ing] . . . [attestations] . . . by the secured party." [3] These deficiencies are "substantive" (as opposed to "formal"), the trustees argue, because another provision of the Real Property Article requires the presence of an "oath or affirmation of the . . . party secured by a deed of trust that the consideration recited . . . is true and bona fide . . . ." § 4–106. The affidavits are defective substantively for another reason, according to the trustees. The affidavits are false in that they "purport," but do not in fact, contain "attestations by the secured parties." Reply Brief of Appellants at 5 (describing *Ameriquest Mortgage Co. v. Paramount Mortgage Services,* 415 Md. 656, 4 A.3d 934 (2010) as "unequivocally h[olding] that a false affidavit is not a formal defect that can be cured by the passage of time"). Thus, taken together, because the affidavits (1) contain no oath or affirmation by the

---

**3.** The trustees state that AP 2–4 lack "affidavits of consideration by the secured party." We gather from their brief, however, that they mean "acknowledgment by the secured party." They recognize that, in AP 2–4, there existed affidavits, but the secured parties' names did not appear where required.

secured parties and (2) are false, they are defective substantively and, therefore, not cured by § 4–109—a provision that cures only "technical or formal" (as opposed to substantive) defects.

The deficiencies identified by the trustees, of course, stem from the fact that the affidavits of consideration (and acknowledgments contained therein) are either "lack[ing] ... or improper ...." § 4–109(c)(4). Stated another way, the Legislature chose to define certain defects, including the ones in the present case, as curable after a period of six months. We decline to ignore or unsettle these express statutory instructions. *See Fikar v. Montgomery County*, 333 Md. 430, 434–35, 635 A.2d 977, 979 (1994) ("[W]here statutory language is plain and free from ambiguity and expresses a definite and sensible meaning, courts are not at liberty to disregard the natural import of words with a view towards making the statute express an intention which is different from its plain meaning." (internal quotation marks and citations omitted)).

Although addressed in greater detail *infra*, our reading of § 4–109 does not render superfluous the affidavit of consideration requirement of § 4–106. *See Kortobi*, 410 Md. at 177, 978 A.2d at 252 (stating that statutes should be construed so that "no word, clause, sentence or phrase is rendered superfluous or nugatory") (internal quotation marks and citations omitted). Rather, the General Assembly acted within its charge to require an oath or affirmation as to the bona fide nature of the consideration. Indeed, such a practice assists to " 'prevent fraudulent transfers of property upon false or pretended consideration,' " *Pagenhardt v. Walsh*, 250 Md. 333, 336, 243 A.2d 494, 496 (1968) (quoting *Marlow v. McCubbin*, 40 Md. 132 (1874)), and, in the process, improves the reliability of land records. The Legislature was also within its realm, however, to ease the long-term, extraneous consequences of non-compliance with its procedural rules through provisions like § 4–109.

With respect to *Ameriquest*, we faced there an affidavit of consideration/disbursement which "stated [inaccurately] that

the money was disbursed not later than the 'execution and delivery' of the deed of trust...." *Ameriquest,* 415 Md. at 669, 4 A.3d at 942 (some internal quotation marks and citation omitted). In fact, "no money [had been] disbursed at the time." *Id.* (internal quotation marks and citation omitted). We held that, although the affidavit was not true on the date of delivery, there was still substantial compliance with § 4–106 because "the relevant information contained in the affidavit ... was true on the date that the deed of trust was *actually recorded* ...." *Ameriquest,* 415 Md. at 675, 4 A.3d at 945 (emphasis added). In reaching our conclusion, we observed that this was "a false affidavit," which "is not a 'formal defect' that must be challenged within six months after it is recorded...." *Ameriquest,* 415 Md. at 672, 4 A.3d at 944.

In the present case, the best argument of falsity in one of the deeds of trust in the consolidated cases occurs in AP 2, where the borrower signed in the place reserved for the affiant agent. We are unconvinced that this is the kind of material or "substantive" falsity with which the statute and *Ameriquest* was concerned. Indeed, the express language of § 4–109 recognizes that "improper acknowledgments" occur, but resolves that this type of defect does not hamper indefinitely the validity of a deed. The statute does not account, however, for affidavits which misstate seemingly-material facts regarding the execution and distribution of the sworn-to substance of the affidavit, i.e., the consideration, as was the case in *Ameriquest.* We attribute, as we must, such disparate treatment to the judgment of the Legislature.

## B. Legislative History Supports Our Plain Language Reading of § 4–109.

In the past, we questioned, seemingly, but only occasionally, the relevance of the plain meaning rule, remarking that "[it] is not absolute," *Fikar,* 333 Md. at 434, 635 A.2d at 979 (internal quotation marks and citations omitted), and that "we are not limited to the words of the statute as they are printed in the Annotated Code"; rather "[w]e may and often must consider other external manifestations or persuasive evidence, includ-

ing ... material that fairly bears on the fundamental issue of legislative purpose or goal...." *Stapleford Hall Joint Venture v. Hyatt*, 330 Md. 388, 400, 624 A.2d 526, 532 (1993) (internal quotation marks and citations omitted). These prescriptive statements, however, do not connote a jettisoning or diminution of the plain meaning rule, or suggest that we may substitute our judgment for that of the Legislature properly exercised. Instead, they serve two valuable purposes: (1) cautioning against interpretations that would lead to "an[ ] absurd result...." *Kaczorowski v. Baltimore*, 309 Md. 505, 515, 525 A.2d 628, 633 (1987) (internal quotation marks and citation omitted) [4]; and (2) authorizing courts, "in the interest of completeness, to look at the purpose of the statute and compare the result[s] obtained...." *Motor Vehicle Admin. v. Jaigobin*, 413 Md. 191, 198, 991 A.2d 1251, 1255 (2010) (internal quotation marks and citation omitted); *see id.* ("That inquiry ... is a confirmatory process; it is not undertaken to contradict the plain meaning of the statute." (internal quotation marks and citation omitted)).[5] In the present section of our analysis, we elect to employ additional tools of statutory

---

**4.** Even the *Kaczorowski* Court cautioned that "[w]e do not mean to suggest that a court is wholly free to rewrite a statute merely because of some judicial notion of legislative purpose." *Kaczorowski v. Baltimore,* 309 Md. 505, 516 n. 4, 525 A.2d 628, 633 n. 4 (1987) (internal quotation marks and citation omitted).

**5.** The plain meaning rule was established to ensure that the intent of the Legislature was carried into effect. *See Price v. State,* 378 Md. 378, 387, 835 A.2d 1221, 1226 (2003). The rule has the added purpose, however, of placing policy judgments squarely in the democratic hands of the General Assembly—for, if we jettisoned or relegated the plain meaning rule, the Legislature would be free to legislate more ambiguously—that is, punt democratic policy choices to this Court.

Of course, sometimes the statutes presented to this Court are simply outdated and do not reflect a legislature that "has ... ducked its lawmaking responsibility." William D. Popkin, *Law–Making Responsibility and Statutory Interpretation,* 68 IND. L.J. 865, 878 (1993). A general reluctance to hold the Legislature to its words, however, risks "plac[ing] judges on the slippery slope toward judicial law making, by acknowledging that the plain meaning of the text is not paramount and by requiring courts to identify substantive policies that prevail over the text." Popkin, *supra,* at 879.

construction for the latter reason—to confirm our earlier interpretation—although we do not mean to suggest that such is necessary in each case. *See I.N.S. v. Cardoza–Fonseca*, 480 U.S. 421, 453, 107 S.Ct. 1207, 1224, 94 L.Ed.2d 434, 461 (1987) (Scalia, J., concurring) (expressing concern that discussion of a statute's legislative history "will be interpreted to suggest that similarly exhaustive analyses are generally appropriate (or, worse yet, required) in cases where the language of the enactment at issue is clear").

### 1. *The Legislature Expanded the Curative Statute to Cover These Types of Defects.*

Since the mid–1800s, the Legislature passed annual retrospective acts to cure "defective" instruments recorded during the previous year. *See Ameriquest*, 415 Md. at 670, 4 A.3d at 942–43. Broadly speaking, these curative provisions excused formal deficiencies in an instrument and rendered the instrument valid as to third parties. *See Dryfoos v. Hostetter*, 268 Md. 396, 404, 302 A.2d 28, 32 (1973). A missing affidavit, however, was not among these curable deficiencies in the beginning—as of 1856, the General Assembly provided that "no mortgage shall be valid except as between the parties thereto unless the affidavit of consideration was evidenced in the mortgage." *Stack v. Marney*, 252 Md. 43, 48, 248 A.2d 880, 884 (1969) (internal quotation marks omitted). The purpose of this affidavit requirement was to "prevent fraudulent transfers of property upon false or pretended consideration...." *Pagenhardt v. Walsh*, 250 Md. at 336, 243 A.2d at 496 (internal quotation marks and citation omitted).

This Court held in 1968 that—curative statute aside—"an affidavit deficient in form ... except as between the parties, or as to those having actual notice, is regarded ... as a nullity...." *Pagenhardt*, 250 Md. at 338, 243 A.2d at 498. Substantial compliance is sufficient with regards to the "*content*" of the affidavit of consideration. *See id.* (emphasis added) (citations omitted). With respect to "*form*," however, the Court held that the standards must be followed strictly

and literally to render the instrument valid. *See id.* (emphasis added).

The General Assembly seemed to disagree with us and included in the 1971 version of the retrospective curative act an *abrogating* provision:

> All deeds, mortgages ... which may have been executed, acknowledged or recorded in the State subsequent to the passage of the act of the general assembly of Maryland passed at its January Session, 1858, Chapter 208 which may not have been acknowledged according to the laws existing at the time of said acknowledgment or which may not have been acknowledged before a proper officer, or in which the certificate of acknowledgment or *affidavit of consideration is not in the prescribed form* ... shall be and the same are hereby made valid....

Md.Code (1957, 1968 Repl.Vol., 1971 Cum.Supp.), Art. 21, § 99 (emphasis added). With this enactment, the Legislature expanded explicitly the scope of the curative statute, covering affidavits that failed to comply with the appropriate *form* and abrogating our holding in *Pagenhardt. See Dryfoos,* 268 Md. at 407, 302 A.2d at 34; Art. 21, § 99. The Legislature, however, made no reference to—and did not add to the curable defects—missing affidavits.

A year later, the General Assembly expanded the scope of the curative statute once again. In 1972, the Legislature reorganized and recodified then Article 21 and, for the first time, enacted a prospective curative statute that obviated the need for annual, retrospective acts. *See Ameriquest,* 415 Md. at 670, 4 A.3d at 942. Also for the first time, the statute cured both the absence of an affidavit as well as an affidavit that is present, but defective. § 4–109(c)(4).[6]

The trustees argue that applying the curative statute to the particular defects here would "effectively undermine th[e]

---

6. The universe continues to expand. After the operative time in this case, the Legislature extended further the reach of the statute, curing now "[a] failure to name any trustee in a deed of trust." § 4–109(c)(6).

fundamental principle in *Pagenhardt*": That an affidavit de-
fective in *form* (as opposed to *content*)—like a missing affida-
vit or an affidavit without all proper acknowledgments—"is
regarded ... as a nullity, since it creates no valid lien and
cannot be regarded as having put subsequent creditors on
constructive notice." *Pagenhardt*, 250 Md. at 338, 243 A.2d at
498 (acknowledging that a missing affidavit renders a mort-
gage invalid and deciding that a lack of acknowledgment, by
the secured party, also rendered the mortgage invalid); *Pa-
genhardt*, 250 Md. at 335, 243 A.2d at 496 ("If the affidavit (of
consideration) is lacking or if the affidavit is bad, the mortgage
will, as a general rule, have no effect except as between the
parties." (internal quotation marks and citation omitted)). As
demonstrated previously in this opinion, the Legislature ex-
panded the curative statute over time. Most relevantly, the
Legislature chose to make curable certain defects, like those
in the present case, including: (a) missing acknowledgments;
(b) missing affidavits; (c) improper or defective acknowledg-
ments; and (d) improper or defective affidavits. Our holding
today merely bows to those legislative decisions. As noted
*supra*, the trustees placed all of the defects into two catego-
ries—missing affidavit and missing acknowledgment—but this,
of course, is of no moment.

### 2. *Neither the Plain Language Nor Our Interpretation of § 4–109 Renders § 4–106 Surplusage.*

The trustees argue that applying the curative statute (and,
in particular, § 4–109(c)(4)) as we are doing would be "unrea-
sonable," for it would be a "backdoor abrogation of the affida-
vit requirement of ... § 4–106, which stakes the very validity
of a mortgage or deed of trust in this State on the lender or
his agent making an oath or affirmation before a notary." We
agree that § 4–106 was enacted to prevent fraud. As stated
by the Court of Special Appeals:

> The purpose of the acknowledgment or affidavit is to pro-
> tect, insofar as possible, the rights of subsequent creditors
> from sham mortgages and at the same time assure that the
> mortgage is *bona fide*. The acknowledgment also protects a

property owner, to some extent, from a possible fictitious mortgage.

*Berean Bible Chapel, Inc. v. Ponzillo,* 28 Md.App. 596, 601, 346 A.2d 702, 705–06 (1975). We disagree, however, that enforcing § 4–109 would be a "backdoor abrogation" of § 4–106. The Court of Special Appeals recognized correctly in *Ponzillo* that the "[L]egislature could have required or not required an affidavit of consideration or an acknowledgment." 28 Md.App. at 601, 346 A.2d at 706. As such, it was also empowered, through the enactment of a curative statute, to "shorten the time in which subsequent creditors without notice ... may act against property [the title to which was so afflicted]...." *Id.*

Recording statutes were enacted originally so that "all rights, incumbrances or conveyances, touching or in anywise concerning land, should appear in public records." *South Baltimore Harbor & Improv. Co. v. Smith,* 85 Md. 537, 544, 37 A. 27, 29 (1897) (internal quotation marks and citation omitted). In adding certain protections, like the affidavit requirement of § 4–106, the Legislature not only defended against fraud, but also furthered the goal of accuracy in public land records. In enacting § 4–109, however, the General Assembly balanced the value of accurate and reliable land records with the importance of promoting confidence in the validity of instruments and the free flow of commerce, unhindered by "formalities." We are not free to upset the plain language of the statute and, in the process, re-weigh the balance so struck.[7] Given the plain text of § 4–109, which is bolstered by the legislative history of the statute, we answer in the affirmative all four certified questions.

---

7. Our holding should not be construed to suggest that a fraudulent instrument is rendered valid under § 4–109. The "record" here does not reveal that the trustees pleaded fraud or sought to prevent the transfer on the grounds of fraud, aside from their *ex post* allegations made during oral argument before this Court. *See Ameriquest Mort. Co. v. Paramount Mort. Servs.,* 415 Md. 656, 4 A.3d 934 (2010). With AP 2 in particular, we recognize that the borrower's name appears in place of the affiant agent's, but we are unwilling to characterize such an impropriety—even if inaccurate technically—as a fraud.

The trustees contend that, despite the plain language and legislative history, the lack of an affidavit is not cured. They point to *Layton v. Petrick,* 277 Md. 421, 355 A.2d 466 (1976), a decision issued after the Legislature amended relevantly the curative statute. Judge Singley, writing for the Majority, opined that:

> While none of our cases may flatly so hold, it is palpably clear that the *thrust* of the present curative act, now Code (1974), Real Property Article § 4–109(c)(1) and (4) is directed at a defective acknowledgment, and not at the complete lack of an acknowledgment of consideration or disbursement.

*Layton,* 277 Md. at 426, 355 A.2d at 468 (emphasis added). First, this language is *dictum* and ought not be granted the same weight as the holding. The trustees aver to the contrary, quoting *Schmidt v. Prince George's Hospital,* 366 Md. 535, 551, 784 A.2d 1112, 1121 (2001), for the proposition that, "[w]hen a question of law is raised properly by the issues in a case and the Court supplies a deliberate expression of its opinion upon that question, such opinion is not to be regarded as *obiter dictum,* although the final judgment in the case may be rooted in another point also raised by the record." (Citations omitted.) As the curative act was not at issue in *Layton,* the question on which Judge Singley expounded was not raised properly before the Court. *See Layton,* 277 Md. at 426, 355 A.2d at 468 ("In any event, the ... curative act, § 4–109, is by its terms not applicable to a defective grant recorded before 1 January 1973 if the defect, as it was here, is challenged in a judicial proceeding commenced by 1 July 1973."). Second, even if this language was not dictum and we construe the word "thrust" to mean the exclusion of all other purposes, we still do not subscribe to the position that the present curative act is silent as to missing affidavits and acknowledgments, in light of the plain words of the statute.

**CERTIFIED QUESTION ANSWERED AS SET FORTH ABOVE. PURSUANT TO SECTION 12–610 OF THE COURTS AND JUDICIAL PROCEEDINGS ARTICLE,**

THE COSTS SHALL BE EQUALLY DIVIDED BE-
TWEEN THE PARTIES.